## REEVES & CO. *vs.* WILLIAM CORRIGAN, *et al.*

Opinion filed December 7th, 1893.

**Written Order for Machinery—Contruction Contract for Sale—Alteration by Agent.**

Plaintiff, a corporation, was engaged in the manufacture of farm machinery at Columbus, Ind., and W. & R. were plaintiff's agents for the sale of machinery at Lisbon, D. T. The defendants negotiated with plaintiff, through said agents, for the purchase of a certain straw stacker, and signed and delivered to such agents a written order directing that such straw stacker be forwarded from plaintiff's place of business, and delivered to the defendants, at a time stated in the order, at Lisbon, D. T. The terms of the proposed purchase, including the price and terms of payment, were embraced in the order, with other stipulations, including a warranty of the machine, coupled with a right to rescind, and return the machine, etc. Pursuant to such order, and in due time, plaintiff forwarded the straw stacker, and delivered it to the defendants at Lisbon. In an action for the purchase price, defendants denied the purchase, and set up an alleged oral agreement with plaintiff, through said agents, whereby the defendants took possession of the straw stacker on trial only, but did not purchase the same. The trial court instructed the jury as follows: "When the machine came, and before Messrs. Maddox & Corrigan took the machine, they had the power or the option at the time to say to these plaintiffs: 'We will not take the machine on the terms of the written order. We have concluded not to take the machine on those terms.' They had a right to rectify the terms of that purchase. They had a right to refuse to take the machine at all." *Held*, that such instruction was error. Whether the order was or was not a contract of sale, or whether or not the title would pass after the delivery of the order and its acceptance, but before the defendants had received the machine, is not material in such a case. In any view of the transaction, the order was not a nullity. After the plaintiff, strictly pursuant to the requirements of the order, had accepted the order, forwarded the machine, and tendered it to the defendants at Lisbon, it was incumbent upon the defendants to receive and settle for the machine in accordance with the stipulations contained in the order. Defendants could not, after a tender, arbitrarily, and without cause, refuse to receive the machine under the terms of the order, without violating their agreement, and being liable in damages therefor.

**Signing Order—Knowledge of its Contents Presumed.**

The order in question embodied the following stipulation: "The stacker is hereby purchased and sold subject to the following warranty and agreement, and no one has authority to add to or abridge or change it in any manner." *Held*, that defendants, having signed the order embracing such stipulation, are presumed to be aware of this feature of the order, and are bound to know it and observe its requirements. The stipulation was lawful, and one which the parties had a right to make, and, being made, the defendants, while it was in

force, could not lawfully enter into an oral arrangement with plaintiff's agents, the terms of which are wholly inconsistant with those stipulated in the writing.

**Verdict not Justified by the Evidence.**

> After an examination of the evidence, *held*, further, that the verdict returned was not justified by the evidence.

Appeal from District Court, Ransom County; *Lauder*, J.

Action by Reeves & Co., a corporation, against William Corrigan and Eugene Maddox. Defendants had judgment, and, from an order denying a new trial, plaintiff appeals.

Reversed.

*L. W. Gammons* and *Steele & Rees*, for appellant.
*Rourke & Allen*, for respondents.

WALLIN, J. This action is brought to recover $200 and interest as the alleged purchase price of an implement called a "Reeves Patent Straw Stacker," which the complaint charges was sold by the plaintiff, a corporation, to defendants, at Lisbon, D. T., on September 21, 1888, for the agreed price of $200, to be paid in installments of $100 each, in November, 1888, and in November, 1889. Defendant Maddox, the partner of Corrigan, was not served with the summons, and never appeared in the action. Defendant Corrigan answered the complaint separately, and denied that the defendants, either jointly or severally, or in any manner, ever bought the straw stacker of the plaintiff, and further answered, in substance, as follows: That at the time stated in the complaint the defendants, who were partners in a threshing outfit, were induced by the plaintiff, through its agents at Lisbon, D. T., to take the straw stacker in question on trial, and defendants did take the same for trial only; that the agreement was that these defendants should try the stacker, and if it should do good work, and give them full and entire satisfaction, that the defendants might then at their own option, purchase the stacker, or not, but, if they chose to purchase it, that it could then be purchased at the price stated in the complaint; that defendants tried the stacker, and found it defective, and that it did not do good

work, nor satisfactory work; and that defendants never did purchase the same.    A jury trial was had, resulting in a verdict for defendants.    A statement of the case, embracing the exceptions and all of the evidence, was settled, and a motion for a new trial was made, on the ground of alleged errors of law occurring at the trial and for alleged insufficiency of the evidence to justify the verdict.    The motion was denied.

There is no substantial conflict in the evidence.    The following facts are conceded: That, in the year 1888, plaintiff was engaged in the sale of agricultural implements at Columbus, Ind., and was then selling the Reeves patent straw stacker.    That, at the same time, plaintiff was represented at Lisbon, D. T., by the firm of Worden & Rickford, which firm was then in the machine business at Lisbon, and were plaintiff's local agents there for the sale of the straw stacker.    That at the solicitation of plaintiff's said agents the defendants signed in their firm name, and delivered to plaintiff's said agents, an order for a Reeves straw stacker, which order was in the following words and figures: "Dated at Lisbon, D. T., July 17th, 1888.    W. E. Worden:  You will please deliver to me at Lisbon, D. T., on or about the 1st day of August, 1888, new Reeves patent straw stacker, all complete; said stacker to be of the ordinary width and length, and is intended to be attached to a Buffalo Pitts separator, built in 1885.    Where in consideration thereof, I, or we, agree to receive the same, pay the freight and charges from Columbus, Ind., and at the same time settle for said stacker in cash and notes, in the sum of two hundred dollars, as follows:    Cash in hand, ——; note due November 1st, 1888, for $100.00; note due November 1st, 1889, for $100.00; note due —— 1st, 188—, for $——.    Notes to be made payable to the order of ————, and their blanks shall be used, and bear the highest rate of legal interest from date until paid.    Said notes to be accompanied by a mortgage on additional property, if required, or other approved security.    This stacker is hereby purchased and sold subject to the following warranty and agreement,

and no one has any authority to add to, abridge, or change it in any other manner: That it is well made, of good materials, and with proper management it is capable of doing first-class work; that the purchaser shall have one day to give it a fair trial, and, if it should not work well, written or personal notice, stating wherein it fails, is to be given to the agent from whom it is received, and reasonable time allowed to get to it, and remedy defects, if any, (the purchaser rendering necessary and friendly assistance,) when, if it cannot be made to do good work, a reasonable time shall be allowed to get a man from the house; and, if the stacker cannot be made to do good work then, it shall be returned to the place where received, and a new stacker given in its place, which shall fill the warranty, or the notes and money will be refunded; which, when done, shall be the settlement of the whole transaction. Continued use of the stacker for more than one day shall be evidence that the warranty is fulfilled. Order taken by Worden & Rickford, P. O., Lisbon, D. T. Corrigan & Maddox." Pursuant to said order, the plaintiff, in due time forwarded a Reeves straw stacker to their said agents at Lisbon, and the latter delivered the same to the defendants at Lisbon, and defendants removed the same, and operated it at least one season, i. e. in 1888, and a part of the next season. The straw stacker has never been returned, and at the time of the trial, which occurred in December, 1891, it was in defendants' possession. At the time of the delivery of the stacker, two promissory notes were executed and delivered to Worden & Rickford, payable to the plaintiff's order, for the sums stated in the order, and by their terms the notes fell due at the times mentioned in the order. A chattel mortgage was also given to secure the notes. The notes and mortgage were signed by the defendant Corrigan only, and for some reason, not explained in the record, were not signed by defendant Maddox. The action is not upon the notes, but they and the mortgage were put in evidence, without objection, as tending to support the plaintiff's allegation of a sale and delivery of the stacker to the defendants as alleged in the complaint.

In support of its complaint, the plaintiff put in evidence the deposition of W. E. Worden, who after stating that he resided at Lisbon, at the time in question, testified as follows: "Q. State whether you had, during the summer of 1888, any business transactions with the defendants, Corrigan & Maddox. A. I did. Q. State whether you had such a transaction with reference to what is called the 'New Reeves Patent Straw Stacker.' A. I did. Q. What relation at that time, and in that transaction, did you bear to Reeves & Co., the plaintiff in this action? A. I was agent for them. Q. For the sale of their manufactures at that place? A. Yes, sir. Q. What transaction did you have with defendants, Corrigan & Maddox? A. I sold them a machine. Q. What machine? A. I sold them a Reeves stacker. Q. Known as the 'Reeves Patent Straw Stacker?' A. Known as 'Reeves Stacker.' Q. State whether or not you had a written order from the defendants for the purchase of such a stacker. A. I did. [Here the order above set out was put in evidence without objection.] Q. State whether or not, upon this written order, Exhibit A, you delivered to the defendants the machine in question. A. I did. Q. State whether or not you sold this machine to the defendants, or whether the machine was to be tried by them, and purchased by them, at their option, after trial. A. I sold them the machine, guaranteed material and workmanship, to be returned in case it did not fill the guaranty. Q. Did they ever return it? A. They never tendered it back, to my knowledge. They never returned it. Q. Was it upon any other condition than that stated in the written order, Exhibit A, that you delivered the machine in question to the defendants? A. I do not remember any other condition. Q. State whether or not it was in fulfillment of this written order that you so delivered the machine to them. A. Certainly."

In support of the defense, the defendant Corrigan testified as follows: "Q. I will ask you to state just what that transaction was. A. Mr. Worden insisted on me, quite a while, to buy a Reeves stacker to attach to my threshing outfit. I gave him an order, after quite a while, and a short time after I took a straw

stacker out. Mr. Worden came out. The day he came out, we did not thresh any of any account. Our engine did not work right. So we did not give the machine a trial, and he promised to come back. He came back once, and did some little fixing about it,—showed me some points. Q. What led up to your taking the straw stacker? What was the understanding? Say whether you bought it outright, or what you were to do with it,— take it out and try it? By the court: Just state the transaction had between you and Mr. Worden at the time you took the straw stacker out, or the substance of it. A. Well, at the time he came out to try the stacker, and put her in running order. At the time the machine did not work right, and he promised to come back, and get her rigged out and in running order. My recollection of the conversation is that I was to take it out and try it, and if she proved to do good work,—to carry the straw off our separator,—and to be made of good material, I was to keep her. If not, I was to return her. This was somewhere near the 1st of September. I took the straw stacker out. It did not work very good the first day. Mr. Worden was there when it started. Q. Did he make it work good before he went away? A. No. We run her for awhile." On cross-examination, Corrigan's testimony as to taking possession of the machine is as follows: "It was about the 1st of September that I got the stacker. I signed the written order for it some little time before that. I don't know exactly how many days I used the stacker that fall. Threshed some jobs with it. I used it some the next fall. Threshed some jobs with it. One job we did not finish, I know. Started on that, and she collapsed,—had a break up. I never took the machine back, but offered to take it back somewhere about the 10th or 15th of September, I think. I don't think that I took the machine out. Had some talk with Mr. Worden in regard to the machine being delivered. He did not ask me to pay for it in advance. Q. Did he ask you to give some notes in settlement? A. Yes, I signed some notes. I did it on condition that he was to make everything work right." Corrigan further testified as follows: "Q. What

agreement had you with Mr. Worden to keep it over the next season? A. The agreement was to keep it over, and he was to put it into good running order the next year. In the condition the machine was at the time I got it, it was not worth anything to me, and now lays about six miles out here. I offered to return the machine, but did not return it because Mr. Worden induced me to keep it. Q. For what reason? How did he induce you to keep it? A. He always claimed that he could make it work, and that it would work." In 1889, Corrigan sold his interest in the threshing outfit to his partner, Maddox; and, with respect to the stacker, Corrigan testified: "Q. Then any interest that you had or might have in the straw stacker was transferred to Maddox at the time the machine was transferred, as I understand it? A. Yes. Q. And, if Mr. Maddox was satisfied with the straw stacker, he was to pay for it? A. Pay for it if it worked,—do good work." Thomas Gilbertson testified as to the circumstances attending the delivery of the stacker as follows: "Q. I will ask you if you heard the conversation between Mr. Corrigan and Worden at the time? A. Part of it, yes. Q. State what that conversation was? A. Well Mr. Corrigan was in favor at that time to take the stacker, as I heard, and, if the stacker didn't work, needn't keep it, and Maddox was in with him; and finally Mr. Worden talked him into taking the stacker, providing, if it—if the straw stacker —didn't satisfactorily work, that the stacker could be returned. That is as near as I can remember. Mr. Worden was coaxing these boys to take the stacker out, and he says. 'If it is not satisfactory you need not keep the stacker, but we will see that the stacker works satisfactory.'" Corrigan was recalled, and testified that the understanding was that if they took the machine they were to pay $200 for it, according to the agreement.

The court instructed the jury at length upon the issues in the case, and, among other things, charged the jury as follows: "Messrs. Corrigan & Maddox signed an order, and delivered it to Mr. Worden, the agent for the plaintiffs, for this machine,—for the purchase of this machine, when it came. That is not the

contract of sale. That is a customary contract, called, in lieu of a better name, a 'contract for a sale in the future.' The title does not pass. The machine is not delivered at the time the order is signed, and it is simply a contract for the sale of property in the future. When the machine came, and before Mr. Maddox and Mr. Corrigan took the machine, they had the power or the option, at the time, to say to these plaintiffs: 'We will not take the machine on the terms of the written order. We have concluded not to take the machine on those terms.' They had a right to rectify the terms of that purchase. They had the right to refuse to take the machine at all. If you shall find that there was such a revocation of the terms of that order before the property was delivered, then, so far as the written order was changed, it will be superseded by the oral contract between the parties at the time this property was delivered to Corrigan & Maddox." It is unnecessary to quote the whole charge. We need only state that the court submitted the question to the jury, upon the evidence, whether, as a matter of fact, the stacker was delivered to the defendants under the terms of the written order signed by them, or whether that order was set aside or materially modified by the defendants by a new oral arrangement made at the time of the delivery between the defendants and plaintiff's agents at Lisbon. This question is submitted as the pivotal question in the case. The court further instructed the jury: "As to whether the machine worked or did not work is not material, in the view the court takes of this case. The simple question here is, did Messrs. Corrigan & Maddox buy the machine at the time they took it out? Did they buy it with a warranty, or did they take it on trial? If these defendants bought the machine with a warranty, they had a right to rescind the contract and return the machine, but it is not contended here that the defendants ever rescinded the contract. That is not claimed by the defendants in this suit."

There are several assignments of error, but those chiefly relied upon in this court are as follows: "*First*, That the court erred in refusing to direct a verdict for the plaintiff. *Second*, The evidence

is insufficient to justify the verdict. *Third,* To the following instructions given to the jury, to which an exception was saved: 'When the machine came, and before Mr. Maddox and Mr. Corrigan took the machine, they had the power or the option at the time to say to these plaintiffs: "We will not take the machine on the terms of the written order. We have concluded not to take the machine on those terms." They had the right to recify the terms of that purchase. They had a right to refuse to take the machine at all.' "

We are clear that all of the assignments of error are valid, and must be sustained. As we view the case upon the record, the entire charge of the court to the jury, in so far as it related to the material facts and issues, proceeded upon a misconception of the law, as applicable to the conceded facts. We think it will be unnecessary in this court, and was unnecessary in the court below, to consider whether the order for the machine, at the time it was signed and delivered by the defendants to the plaintiff's agents, operated as an absolute sale, or whether or not the title then passed to the defendants. The real case before the trial court was this: The order had been executed and delivered. It embraced every element essential to a proposal to purchase the machine, including a description of the machine, the time and place when and where it was to be delivered to the defendants, the sum to be paid for the machine, including the terms of credit; also, an agreement to pay freight charges from Columbus, Ind., to Lisbon, and an express agreement to receive and settle for the machine in cash and notes, as specified in the order. The plaintiff, relying upon the legal validity of the order, had complied with the requirements thereof to be performed by the plaintiff, and had forwarded the machine to Lisbon, and by its agents there had requested the defendants to take it away, and settle for the same. Upon this state of facts, it was quite immaterial whether, in strictness, the title to the machine passed, or did not pass, at any time before defendants took possession. The material inquiry at this point was and is whether, when the

machine was forwaded and offered to be delivered by plaintiff's agents to the defendants, they were under a legal obligation to comply with the terms of the order, and receive the machine under the order, and settle for the same. The trial court instructed the jury, in effect, that the defendants were under no such obligation. The court said: "When the machine came, and before Mr. Maddox and Mr. Corrigan took the machine, they had the power, at their option, at the time, to say to these plaintiffs: 'We will not take the machine on the terms of the written order. We have concluded not to take the machine on those terms?' They had the right to rectify the terms of their purchase. They had the right to refuse to take the machine at all." No reason was offered by the learned trial court in support of its views, as above expressed, upon this feature of the case; and, from our point of view, no legal reason and no authority can be found in support of the instruction last quoted. It is, in our opinion, fundamentally unsound to assert that a valid agreement, which is not assailed as being made fraudulently, or under a mistake of fact, or under duress, is not binding upon the parties to is simply and solely because one of the parties may elect, without cause, to repudiate it after it has been relied upon and performed by the other party. The claim is not made that, before or at the time the defendants took away the machine, they found any fault with its construction, or pretended that the plaintiff had not fully performed its part of the agreement in manner and form as stipulated in the order. Let it be conceded, for argument's sake, that the title did not pass in advance of an actual delivery of the machine to the defendants; and the fact will remain that the defendants, by their deliberate agreement, were bound to receive and settle for the machine, when it was offered to them. This agreement could not lawfully, and with impunity, be violated by the defendants; and, if they had actually refused to accept the machine under the contract,—which, so far as appears, they did not do,—they would, beyond a peradventure, have been liable in damages for their breach of contract.

There is another objection to the above instructions, as given to the jury, which, as we view it, is equally fatal to the verdict: In its charge, the trial court overlooked—at least, did not comment on—the following clause of the writing signed by the defendants: "This stacker is purchased and sold subject to the following warranty and agreement, and no one has any authority to add to or abridge or change it in any manner." If the alleged oral agreement was made at all, it was made by and between the defendants and the agents of the plaintiff, who were forbidden by the terms of the writing from making the change; and such prohibition was brought home to the defendants' knowledge in the very writing which they had signed, and upon which plaintiff had acted. The court, by its instruction to the jury, must have assumed that the inhibitory clause in the agreement was a mere nullity. Here also, the court below advanced no reason for this view of the matter, and we are confident that no good reason can be given. We think the restriction upon the power of plaintiff's agents to alter, change or abridge a written contract, when once deliberately made with the plaintiff, is not only a reasonable restriction, but is also a perfectly legal one, and will bind all persons dealing with plaintiff's agents, and having knowledge of the restriction. *Fahey* v. *Machine Co.*, (N. D.) 55 N. W. 580, 3 N. D. 220. No claim is made that plaintiff ever waived the restriction.

The views already expressed will necessitate a reversal of the order appealed from, but we may add to what has been said still another—and, we think, equally fatal—objection to the verdict. We think the evidence, all of which is certified up, does not justify the verdict. The jury, by their verdict, have said, in effect, that the written terms of the agreement, as stated in the order, were set aside; and a new and different agreement as to the terms of the delivery of the machine was made by parol, at the time when defendants took the machine away from Lisbon. A careful and repeated perusal of the evidence found in the record has served to convince us that the testimony in the case signally fails and comes short of establishing any such new and oral arrange-

ment. In other words, the defense pleaded in the answer is, in our judgment, without support in the evidence. Plaintiff's agent, as has been seen, testified, pointedly and squarely, that he delivered the machine to the defendants under the written order, and in fulfillment of its terms. This was never contradicted by testimony. Defendants produced two witnesses, and only two, who testified as to the talk had on the occasion of the delivery of the machine to the defendants. We have already quoted from the record what was said by the two witnesses. To our minds, it is significant that their testimony discloses nothing like an effort on defendants' part to be relieved from their contract obligations as embodied in the writing. It does not appear from the testimony that either of them refused to accept the machine upon the terms stated in the writing, nor does it appear that a request or suggestion was made at the time, looking to a desire on defendants' part of being released from the terms of the written agreement. Gilbertson testified: "Mr. Worden was coaxing these boys to take the stacker, and he says, 'If it is not satisfactory you need not keep the stacker, but we will see that the stacker works satisfactorily.'" Corrigan testified in substance to the same thing, and stated further: "Yes, I signed the notes. I did it on condition that he was to make everything work right." It would be unprofitable to reproduce the testimony at greater length in this connection. It is quoted above. We have read it carefully, and are satisfied that it harmonizes with the terms of the written agreement, with respect to receiving the machine, settling for it, trying it, and returning it if not satisfactory, all of which details were fully anticipated and provided for in the well guarded agreement which was reduced to writing. The statement made when the stacker was delivered, that it could be returned if it failed to do good work, was in entire harmony with the written contract, which expressly provided that in such event a new stacker would be given, which would fill the warranty, or the notes would be returned  Upon the testimony adduced at the trial, we can find no support for the verdict. In the disposition

of the case, we have had occasion to apply only the elementary principles of the law of contracts, and hence we have not considered it necessary to fortify our views by the citation of numerous cases. It appearing conclusively from the record that the defendant Corrigan has no valid or legal defense to the plaintiff's cause of action, therefore the order appealed from must be reversed, and the District Court will be directed to enter judgment for the plaintiff, as demanded in the complaint. All concur.