COATES & SONS v. EARLY.

1. EVIDENCE—WRITTEN CONTRACT.—It is not competent for a party to testify as to the understanding which he had of a written contract, where the contract is not ambiguous, nor is it competent for him to testify as to the intention with which he signed such contract. Such writing must be construed by the court, and speaks for itself—following Asbill *v.* Asbill, 24 S. C., 359.

2. IBID.—CUSTOM.—It is not competent to explain by parol the terms of a plain written order for goods, by showing the custom among merchants in ordering that class of goods.

3. RESCISSION OF CONTRACT.—A contract ordering goods cannot be rescinded after goods are shipped.

4. CONTRACT—MISTAKE.—In order tò relieve a party of the consequences of an honest mistake, it must be shown that the other party to the contract in some way caused the mistake, and that party making the mistake could not by due diligence have avoided it.

Before NORTON, J., Darlington, October term, 1894. Affirmed.

Action by J. A. Coates & Sons against B. A. Early, on account of lot of needles shipped on written order. Judgment for plaintiff. Defendant appeals.

*Messrs. Woods & Spain*, for appellant.

*Messrs. Boyd & Brown*, contra.

March 17, 1896. The opinion of the court was delivered by

MR. JUSTICE POPE. This cause came on to be heard before Judge Norton and a jury at the October, 1894, term of the Court of Common Pleas for Darlington County, in this State. The verdict of the jury was for the plaintiff, and after entry thereon of the judgment, the defendant appealed to this court on numerous grounds. Preparatory to their consideration by us, a statement of the facts underlying the controversy is deemed proper. The plaintiff is a corporation under the laws of the State of New York, and as such is engaged in the manufacture for sale of needles, pins, &c., and has been so engaged about five years. The defendant is a merchant of about twenty-five years experience, located about six miles out from the town of Darlington, in the State of South Carolina. Some time in the early part of the year 1893, the plaintiff sent by mail to the defendant a sample copy of needle cards, together with a circular letter, which fully described the goods and stated the price—three cents per card; and also at the same time enclosed a blank order for the defendant to fill in, sign and return to the plaintiff, if he desired to order the goods. The following is a copy of the order for needle cards, with blanks filled by defendant:

"*J. A. Coates & Sons, Limited, Department A, Needle Manufacturers, New York City.*

"Please put up for us and ship by the cheapest way 5 m Owl Brand needle cards, with our advertisement printed in space below the goods for that purpose, on each card in the following sizes:       1 m 1 m  1 m                    2 m

"Sharps, $\overline{5}$. $\overline{6}$. $\overline{7}$. $\overline{1-6}$. $\overline{3-9}$. $\overline{5-10}$.   Betweens, $\overline{3-9}$.

"Please write your advertisement in this space.

| "B. A. Early, "Genl. Merchant, "Guano and Lumber, "Early's Cross Roads. | Terms: 30 days from date of bill; 1% ten days. B. A. Early,   Signature of firm. To Darlington C. H., So. Ca." |
|---|---|

This card was sent by the defendant to the plaintiff on the 29th April, 1893. The defendant retained the sample card and circular letter which plaintiff had sent to him in the first instance.

On the 17th day of July, 1893, the plaintiff, having manufactured the goods and having printed the 5,000 Owl Brand needle cards, to each of which cards was attached seven large needles used for darning, wool work, &c., and also a paper containing twenty-five hand-sewing needles, and on each card was printed the advertisement of the defendant, as designated in his order, forwarded the same by steamship to the defendant, and by the same mail sent forward an account therefor amounting to $150. When the defendant received the goods at his place of business, he would not open the two boxes in which they were shipped, but stowed them away in his warehouse, refusing to pay for the same, alleging that he had only intended to order 5,000 needles, whereas the plaintiff had sent him nearly twenty-five times that quantity. Hence the suit. The plaintiff at the trial offered testimony to the effect that the defendant and its officers had never seen each other, but that all their arrangements were by correspondence; that this Owl Brand needle card with needles, and an advertisement of the business of the purchaser, was one of their special features;

that the circular letter fully explained everything connected with each card, showing that seven large and twenty-five small needles were sold with card as attached thereto, which was fully explained in the circular letter; and the plaintiff produced a copy of such circular letter before the court which it is admitted in the 'Case' for appeal fully answered all these allegations.   The defendant admitted the receipt of the goods and his signature to the order, and that he himself filled out all the blanks in the order, and prepared the advertisement printed on the cards; but when he wished to prove by the defendant himself that the reason he did not open the boxes containing the goods, was because they represented about twenty-five times the amount of goods he had ordered, on objection, the judge presiding ruled: "This circular letter offering to sell needle cards was addressed to this defendant, and also was sent a circular letter illustrating what was meant by needle cards.   The defendant then wrote to the plaintiff, saying that he would accept the terms offered in the circular, and that he would take so many of the goods that were offered to him in the circular.   That, as I understand it, was revocable so long as the order had not been filled and so long as the goods had not been shipped; but when the goods were shipped, completing the contract between the defendant and the plaintiff, then the contract became irrevocable.   Now the question presented is, whether the term 'needle cards' is or is not of dubious meaning.   That is the first question, as I understand it, that is raised.   The plaintiff, so far as the testimony goes now, has shown no disposition to conceal from the defendant what was meant by 'needle card.'   It is not disputed that the goods were furnished and that they complied with the sample as sent.   It is not alleged that each card did not contain what it was represented to contain in accordance with the terms of the circular.   I see no punctuation between 'needle' and 'cards;' but it is all, it seems to me, upon examination of the paper, just as clearly expressed to be an order for 5,000 needle cards.   The next objection, as I understand

it, is that the order is rendered ambiguous by reason of the
designation of the kinds of cards to be sent.   On examina-
tion of the paper, I do not see that the plain order above is
rendered ambiguous by reason of the further filling in of the
kind of needles to be sent.   Now it is argued that, because
it is the custom of merchants to order needles by the thou-
sand, that, therefore, the order is rendered ambiguous; but
it is competent to order needles by the dozen or by the
thousand, or in any other way that parties choose to order
them; and when there is a specific contract, then that spe-
cific contract will vary any contract, and it is binding on
the parties that make the special contract."

Mr. Woods: "As I understand your honor's ruling, you
mean that we could not introduce any evidence to change
that contract at all?"

The Court: "No, sir; I think not."

Mr. Woods: "As I further understand your honor, we
could not submit, under your honor's ruling, the question
as to whether there was a meeting of the minds of the par-
ties?"

The Court: "No, sir.   Under the testimony, so far as de-
veloped in any of the issues, you could not submit that
question to the jury."

Mr. Woods: "Would your honor instruct the jury to find
a verdict?"

The Court: "If you admit the facts as stated now, I
would instruct them."

Mr. Woods: "I propose to undertake to prove by Mr.
Early, in the first place, that this paper having been sent to
him, he filled it out in this manner, supposing that he was
ordering in the usual custom of merchants, 5,000 needles.

"I proposed to show by Mr. Early, further, that appearing
on the face of the paper was an ambiguity, that he under-
stood that the cards referred to the advertisement with his
name attached to the needles in some shape; that the paper
was rendered ambiguous not only by the language used in
respect to the quantity and the cards, but that the cards

referred to the advertisement and not to the quantity, and that was how he understood the contract.

"I proposed, further, to undertake to show in connection with the contract, and to argue to the jury that (the words) 'for that purpose' inserted in this contract, have no meaning whatever.

"I proposed, further, to show that the word 'cards' is not a word of art as used among merchants in business, but when they order needles they order by the thousand, as going to throw light on the question of how Mr. Early understood this contract, and the contract upon which his mind met with these other parties.

"I proposed, further, to show by this witness, if I could, and by others first, what he ordinarily bought, and what was the largest amount of needles he ever bought, as throwing light on the question of the mistake. I proposed to show by other witnesses what merchants usually bought."

The Court: "If that is the testimony that you meant to offer, I would instruct the jury, if they believed the testimony of the plaintiff, to find a verdict for the plaintiff."

Mr. Woods then formally offered a witness, Mr. Early, to prove the largest quantity of needles ever purchased by him. On objection, it was declared incompetent. Exception noted.

He then offered to prove a tender of the goods by defendant to plaintiff. Objected to. Objection sustained. Exception noted. The judge charged the jury, if they believed plaintiffs' witnesses, to find a verdict for $150, with interest thereon from 6th October, 1893, which allowed thirty days from date of bill. The jury then found for plaintiff, debt and interest. After entry of judgment thereon, defendant appealed to this court on grounds as follows:

1. That his honor, Judge Norton, erred in refusing to allow this defendant to testify as to how he understood the order for the needles in question, and to show to the court and jury that his misunderstanding was reasonable and natural.

2. That his honor erred in excluding the testimony of

the defendant, which was offered to show that many times as many needles were shipped to him as he intended to order, and supposed he was ordering, inasmuch as his supposition was reasonable, and his construction of the order was most natural, both from the manner of its wording and according to the custom which universally prevailed in ordering such goods.

3. His honor erred in excluding the testimony offered, to show the unvarying custom prevailing among merchants in ordering needles, as bearing upon the manifestly reasonable understanding and intention of the defendant when he ordered the goods.

4. His honor should have held, that if the defendant, in signing the order for the needles, intended to order five thousand needles, but made a mistake which was reasonable, and was induced so to do by the form of the proposed order sent him by the plaintiff, he would be allowed to explain such mistake, it being a question for the jury as to the existence and reasonableness of such mistake, and erred in not so holding.

5. That his honor should have admitted the testimony proposed as to the mistake and the unvarying custom of merchants, and left it to the jury to determine, as a question of fact, whether a contract was for the purchase and sale of 5,000 needles or 5,000 cards of needles, or whether the defendant might not consider the contract rescinded, and refuse to enforce the same.

6. That his honor erred in holding that the order was in no respect ambiguous, and in excluding oral testimony offered to explain it, and how it was understood by the defendant, whereas the order was ambiguous in various particulars, as appears upon its face.

7. His honor erred in excluding the testimony of the defendant, offered to show that a tender back of the goods had been made to the plaintiff—thus excluding him from showing a rescission of the order and his good faith in the premises.

8. His honor should have held that an honest, reasonable mistake of the defendant in signing and sending the order, arising either from the form of the proposed order sent him or from the expressions therein deporting the usual custom of merchants, or from any ambiguity upon the face of the order, prevented the formation of a contract, and the defendant could not be compelled to comply with the demands of the plaintiff, and he erred in not admitting testimony to that end, and instructing the jury accordingly; and in instructing the jury to find interest from thirty days after September 6th, 1893.

9. His honor refused to allow the defendant to make any proof whatever, that he had made a reasonable and honest mistake in signing and sending to the plaintiff a most ingeniously devised order for twenty-five times as many goods as he wanted or intended to purchase, and one which was on its face ambiguous, and designed and calculated to deceive, and that he erred in so doing.

We have taken the pains to reproduce, in juxtaposition, the rulings of the Circuit Judge and the exceptions of appellant to such rulings, for it is believed that being thus presented and considered, it will be readily seen who is in error. We frankly admit that the rulings of his honor in rejecting the testimony offered here, in the light of the admitted facts of this cause, suggest themselves to us as entirely proper. It was not pretended that there was any contract between these parties, except that in writing fully disclosed by the plaintiff. The defendant, appellant, seeks an escape from his predicament by showing that he made a mistake—that he conceived he was ordering five thousand needles when he was really, in writing, directing the plaintiff to send him a much larger quantity. He seeks to bring forward what he intented to order, rather than what he did order. He seeks to show that his habit and that of other merchants similarly circumstanced as himself, was to order needles themselves, and not cards wherein certain quantities of needles should be attached. He seeks to show that, on

account of ambiguities in the contract itself, he was entitled to introduce such testimony, and he seeks to show that he endeavored to rescind the contract after the delivery by the plaintiff of the goods to him in accordance with the contract. The Circuit Judge very properly held that, inasmuch as the contract was in writing, the law devolved the duty of its construction upon him and not upon the jury. *Asbill* v. *Asbill*, 24 S. C., 359. So, too, as to a mistake by defendant, it being nowhere contended that the plaintiff participated therein; on the contrary, it was in evidence that the plaintiff made no mistake—we do not see under our decisions that it was competent for the defendant to introduce any testimony as to his said mistake. As was said by Chancellor Harper in *Gilchrist* v. *Martin*, Bailey Eq., 494: "The notion of a mistake seems to me to involve the having been misled by some false appearance. If a man spontaneously take up an erroneous impression, not from any deceptive evidence, but merely from the suggestion of his own mind, this can hardly be called a mistake." In the case at bar, the defendant was furnished by the plaintiff with the papers themselves that finally were acted upon by the defendant in the absence of plaintiff. No fraud, concealment or misrepresentation was made or pretended to be made by the plaintiff. The defendant, in the full exercise of his faculties, acted of his own volition. In such a case, when he complains, it seems to us that Chancellor Dargan's words, as written in *Murrel* v. *Murrel*, 2 Strob. Eq., 154, are very applicable: "A party fully competent to protect himself, under no disability, advised as to all the circumstance by which he may be saved in his rights, or in a position where he might by due diligence be so advised; not overreached by fraud, concealment or misrepresentation, nor the victim of a mistake against which prudence might have guarded, has no right to call upon courts of justice to protect him against the consequences of his own carelessness. * * *"

From general observation let us descend to particulars.

The first exception cannot be sustained, because it was not competent for the defendant to testify as to his understanding of the order he gave.   His order was in writing, signed by himself.   He was bound by its terms.   It would be a sad day for the rights of the people, if each party to a written agreement could give his understanding of what was so written.

As to the second exception, it cannot be sustained; for a party has no right to testify as to what his intention in writing and signing a contract was.   His intent must be deduced from the words of his contract, if the words there used are plain.

As to the third exception, it cannot be sustained; for the testimony of a custom among merchants in making contracts for needles has no connection with a contract on that subject complete in all its parts.

As to the fourth exception, it cannot be sustained; for it was in no wise pertinent to the issue of this action whether the alleged mistake of defendant was reasonable or unreasonable.   The plaintiff had no connection with such alleged mistake; he neither caused it nor did he participate in it.

As to the sixth exception, we cannot see that there was any ambiguity here.   The contract, the letter of plaintiff, and the sample card were contemporaneous and were on the same transaction.   With the light furnished by them, there was no ambiguity in the contract certainly for the admission of such testimony as was offered here.

As to the seventh exception, we can see no error; for of what avail could it be to the defendant to offer testimony of an offer on his part to return the goods after the contract had been completed.

As to the eighth exception, we must overrule it; for, as before said, it made no difference whether the alleged mistake of defendant was honest and reasonable.   It was not caused by any fraud, concealment or misrepresentation of the plaintiff.   And the defendant had the means in his power to avoid any mistake.

As to the ninth exception, it must be overruled for the reasons already advanced.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.