[Civ. No. 1202. First Appellate District.—April 4, 1913.]

GEORGE MARTYN, Respondent, v. WESTERN PACIFIC RAILWAY COMPANY (a Corporation), Appellant.

SALES—COUNTERMAND OF ORDER FOR GOODS AFTER ACCEPTANCE.—After an order for goods has been accepted and filled, the buyer cannot countermand the order and escape responsibility for the contract price.

ID.—DELIVERY OF GOODS—ALLEGATIONS SHOWING CONSTRUCTIVE.—In an action to recover the purchase price of steel, an allegation of the shipment of the steel through the medium of a common carrier in the usual course of business, under a bill of lading forwarded to the buyer and designating him as the consignee, sufficiently alleges constructive delivery.

ID.—DELIVERY TO CARRIER—TRANSFER OF TITLE.—Under a contract for the sale of personal property which is silent as to the person or mode by which the goods are to be sent, a delivery by the seller

to a common carrier in the usual course of business constitutes a constructive delivery of the goods and transfers title to the buyer.

Id.—Acceptance of Goods—Refusal Because of Excessive Shipment.—A written order for thirty-six "bars" of tool steel is reasonably free from uncertainty as to the quantity and cost of the steel ordered, and the buyer is not justified in refusing to accept such steel on the ground that the quantity shipped is in excess of the amount ordered.

Id.—Revocation of Order—Remedies of Seller.—Where the buyer of goods revokes his order after it has been accepted and filled by the seller, the seller may stand upon a completed contract of sale and sue for the purchase price; he is not required to sell the goods at the nearest market, and then sue for the difference, if any, between the market and the contract price.

Id.—Delivery of Goods—Time for Making.—In the absence of a requirement in a contract of sale to the contrary, a delivery within a reasonable time is sufficient; what is a reasonable time must be determined from all the circumstances of the case.

Id.—Action for Purchase Price—Interest.—In an action by the seller of goods for the purchase price, interest is allowable from the time of the filing of the complaint, notwithstanding the order for the goods did not specifically designate the sum which would be due upon delivery, where the cost of the goods could have been readily ascertained by the buyer upon receipt of the invoice.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Franklin J. Cole, Judge presiding.

The facts are stated in the opinion of the court.

Warren Olney, Jr., Alexander R. Baldwin, and Allan P. Matthew, for Appellant.

Gray & Smith, and R. S. Gray, for Respondent.

LENNON, P. J.—In this action the plaintiff sued upon an assigned claim for the sum of $1,616.55, which was the alleged contract price of a quantity of tool steel claimed to have been sold and delivered to the defendant at its special instance and request. Plaintiff recovered judgment as prayed for, from which and from an order denying a new trial the defendant has appealed upon the judgment-roll and a bill of exceptions.

Plaintiff's complaint consists of three causes of action separately stated. The first count of the complaint alleges in the usual and ordinary form a cause of action upon an indebtedness for goods sold and delivered to defendant by plaintiff's assignor. The second count of the complaint also states a cause of action upon an existing indebtedness for the same goods alleged in the first cause of action to have been sold and delivered to the defendant, and, in addition to detailing the circumstances of the transaction, proceeded generally upon the theory that title to the goods had passed to the defendant upon tender of delivery. The third count of the complaint was intended, evidently, to meet the contingency of the plaintiff's proof failing to show that title to the goods had passed to the defendant. This count of the complaint, however, was abandoned at the trial and is not in controversy here.

The facts of the transaction out of which this action arose, as shown by the pleadings and proof, are briefly these: The defendant executed and delivered to the local representative of plaintiff's assignor a written order for thirty-six "bars" of tool steel at thirty-nine cents per pound. This order was accepted immediately upon its execution and delivery. Subsequently 4,145 pounds of steel of the kind called for in the order were packed in eight separate boxes, and in the usual and ordinary course of business shipped from France by common carrier via New York, under a bill of lading wherein the defendant was designated as the consignee. Reshipment by rail was made from New York by common carrier to the defendant at San Francisco. The bill of lading, together with the invoice of the goods, were immediately mailed in a letter addressed to the defendant. This letter and its inclosures were received by the defendant in due course of mail. Upon the receipt thereof and while the steel was en route the local representative of the defendant wrote to plaintiff's assignor as follows:

"Gentlemen:—Your letter of May 15th, inclosing invoice of goods ordered, amounting to $1,606 is here. This order is away over and above anything I intended to order, as in figuring it up with your agent here, it amounted to $140. Delivery was to be made in April. Please stop this shipment. I should like to try a little of your steel, but I do not want $1,600 worth of it at present, not at all, if it does not prove satisfactory.

You will, therefore, please arrange to have delivered to me what I want of it or none at all, as I shall not receive the order as invoiced.—Yours truly,

"GEORGE L. DILLMAN, Chief Engineer."

The defendant's order as written called for twenty-four bars of tool steel varying from 1½ to 2 inches square; six ⅞ inch octagonal bars and six ¾ inch octagonal bars. The order was silent as to what the length of the bars of steel would be, and failed to designate their weight singly or as a whole. The evidence offered and received upon behalf of the plaintiff, however, was to the effect that it was understood by the parties to the transaction that "bars" of steel of the kind designated in the order "usually ran between 12 and 18 feet"; and it was shown by expert testimony upon behalf of the plaintiff that the term "bar" as applied to tool steel was understood by mechanical engineers to "mean a finished product ready to put upon the market as steel," which is cut at the mill in square or octagonal form varying in square and octagonal sizes from ¾ of an inch to 3 inches, and from twelve to eighteen feet in length.

The representative of the defendant who gave the order for the bars of steel was the defendant's mechanical and construction engineer, and by reason of his experience and occupation could readily have computed the total weight of the bars specified in the order. It was understood by the defendant that the order would be filled in France, and that from three to four months would be required to make delivery in the state of California.

One of the eight boxes of steel consigned and shipped to the defendant went astray en route between New York and San Francisco, but seven boxes arrived in San Francisco on June 5, 1905, and were thereupon by the common carrier tendered to the defendant. The defendant refused to accept the steel. No objection was made, however, by the defendant at this time or at any time thereafter that one box of steel was missing. Before the assignment to plaintiff of the claim in suit plaintiff's assignor located the missing box of steel and offered to bring it to San Francisco, and make an unconditional physical delivery of the eight boxes of steel to the defendant. The defendant refused the offer, and declined to accept the steel upon the ground that it had not ordered more than one hun-

dred and forty dollars' worth of steel. The steel remained in a warehouse until it was destroyed by fire.

The trial court found as a fact that the allegations of the first and second counts of the complaint were true.

It is now insisted on behalf of the defendant that the evidence is insufficient to support the findings under the first count of the complaint, and that the second count does not state facts sufficient to constitute a cause of action for goods sold and delivered.

The latter contention is based upon the assumption that the second count of plaintiff's complaint does not allege a delivery, and from this it is argued that the only cause of action which the plaintiff could possibly have under that count of the complaint would be one for damages, the measure of which would be the difference between the contract price and the sum for which the goods could be sold in the nearest market after the defendant had repudiated the contract and refused to accept the goods.

It is also contended upon behalf of the defendant that the order in controversy was merely an offer or a proposal to buy, which had not ripened into a completed contract at the time the defendant attempted to revoke the order.

None of these contentions is tenable. Rescission of the contract cannot be successfully claimed or maintained in the face of the evidence, which shows without conflict that the order in controversy was accepted and filled by plaintiff's assignor before the defendant attempted to countermand it. Clearly the defendant could not revoke its order and escape responsibility therefor after the same had been accepted and acted upon by plaintiff's assignor. (Mecham on Sales, sec. 739; *Reeves & Co.* v. *Corrigan,* 3 N. D. 415, [57 N. W. 80].)

The contention that the second count of the complaint does not state a cause of action for goods sold and delivered is advanced upon the theory that the facts pleaded therein do not show a delivery, either actual or constructive, of the goods ordered. This count of the complaint alleges the written order from the defendant and its acceptance by plaintiff's assignor. Full compliance with the order is alleged and delivery of the goods ordered is pleaded by an allegation of shipment through the medium of a common carrier in the usual

and ordinary course of business, under a bill of lading forwarded to the defendant designating it as the consignee. In addition a further and subsequent unconditional offer to physically deliver the amount of steel called for in the order is pleaded.

The plaintiff's proof was substantially in accord with the allegations of the second count of the complaint; and we are satisfied that the facts of the transaction as pleaded and presented by plaintiff sufficiently support the implied finding of a constructive delivery. Moreover, it is conceded that the first count of the complaint states a cause of action. The plaintiff's evidence was not limited to any particular count of the complaint; and it is a generally accepted rule that if a contract of purchase and sale be silent (as it was in the present case) as to the person or mode by which the goods are to be sent, a delivery by the vendor to a common carrier in the usual and ordinary course of business constitutes a constructive delivery of the goods sold, and transfers the title thereof to the vendee. (1 Mecham on Sales, sec. 736.)

The contention that the evidence is insufficient to support the findings under either count of the complaint is based in part upon the assumption that the evidence shows that the representative of the defendant intended to order but one hundred and forty dollars' worth of steel. Upon this phase of the case the evidence is in substantial conflict; and moreover, the order itself, when considered and construed in connection with the established trade meaning of the word "bar" as applied to tool steel, is reasonably free from uncertainty as to the quantity and cost of the steel ordered. The uncontradicted evidence of the plaintiff in this behalf was to the effect that the word "bars" as used in the order indicated with reasonable certainty the lengths into which steel of the kind ordered was usually moulded for the market. This being so, and the sizes, square and octagonal, of the various bars ordered being specified, it required but a simple calculation based upon the face of the order to ascertain to a practical certainty what the total weight and cost of the steel ordered would be.

In short, the evidence shows the acceptance and fulfilment of a plain and unambiguous order for a certain quantity of steel at specified prices; and therefore the defendant will not

be relieved from responsibility for payment merely because it carelessly and inadvertently ordered a larger quantity of steel than was intended or desired. (*Coates* v. *Early*, 46 S. C. 220, [24 S. E. 305] ; 1 Mecham on Sales, sec. 274.)

What we have said thus far in effect disposes of defendant's contention that the only remedy of plaintiff's assignor upon the refusal of the defendant to accept the goods was to sell the same at the nearest market, and then sue for the difference, if any, between the market and the contract price. In other words, if, as we think, the pleadings and proof show that the order in controversy was accepted and executed by plaintiff's assignor, and that the title to the property contracted for had in contemplation of law passed to the defendant prior to the attempted revocation of the order, then the plaintiff was entirely within his rights in electing to stand upon a completed contract of sale and sue for the purchase price of the goods sold and delivered thereunder. (Civ Code, sec. 3310; *Lassing* v. *James*, 107 Cal. 348, [40 Pac. 534] ; *Bement* v. *Smith*, 15 Wend. (N. Y.) 493.)

Incidentally it is suggested upon behalf of the defendant that acceptance of the goods was rightfully refused because the waybill presented to defendant by the common carrier included a charge for freight which, if acquiesced in, would have added approximately $1\frac{1}{4}$ cents per pound to the contract price of the steel ordered.

In response to this it will suffice to say that it does not appear that there was ever any controversy between the parties upon the question of freight charges. To the contrary, it appears that the refusal of the defendant to accept the goods was based solely upon the ground that the quantity shipped was in excess of the amount ordered. Moreover the goods were finally tendered to the defendant by plaintiff's assignor free of all conditions, which tender as a matter of course excluded the charge for freight.

The contention that the preparation and delivery of the steel ordered were unnecessarily delayed is equally without merit. In the absence of a requirement of the contract to the contrary a delivery within a reasonable time was a sufficient compliance with the contract. What is a reasonable time must be determined from all of the circumstances of the individual

case. (2 Mecham on Sales, secs. 1129, 1130, 1132, 1133.) In the present case it appears from the evidence that it was understood by the parties that from three to four months was usually required to prepare, ship, and deliver goods of the kind ordered; and therefore it cannot be said that there was unusual delay in executing the order.

In addition to the foregoing several matters of minor importance are urged upon our attention; but of these only one is worthy of discussion, and that involves the allowance in the judgment of interest upon the sum sued for from the date of the filing of the complaint. In this behalf it is the contention of the defendant that the sum due under the contract could not be determined from the face of the order, and that therefore interest should have been allowed only from the time that such sum was judicially determined.

While, as before stated, the order in suit did not specifically designate the sum which would be due to plaintiff upon the delivery of the steel ordered, nevertheless it is plainly apparent from all the circumstances of the case that it was contemplated by the parties thereto that the invoice to be forwarded upon the execution of the order would reveal the true quantity of steel ordered and the precise sum due therefor. Such an invoice was forwarded and received. This being so, the quantity and cost of the steel could have been readily ascertained by the defendant upon receipt of the invoice, and therefore a judicial determination was not necessary to ascertain the sum due. In other words, the defendant must have known at the time of the commencement of the action precisely what it was obligated to pay. This construction of the transaction justifies the allowance of interest, at least from the time of the filing of the complaint. (Civ. Code, sec. 3287; *Lane* v. *Turner,* 114 Cal. 396, [46 Pac. 290]; *Pacific Mutual Ins. Co.* v. *Fisher,* 106 Cal. 224, [39 Pac. 758]; *Grangers' Union* v. *Ashe,* 12 Cal. App. 757, [108 Pac. 533]; *Courteney* v. *Standard Box Co.,* 16 Cal. App. 600, [117 Pac. 778]; *Robinson* v. *American Fish Co.,* 17 Cal. App. 212, [119 Pac. 388]; *People* v. *New York,* 5 Cow. (N. Y.) 331.)

Upon the whole case we are satisfied that the evidence is sufficient under either or both counts of the complaint to sup-

port the findings, and it is therefore ordered that the judgment and order appealed from be affirmed.

Hall, J., and Murphey, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 3, 1913.