[Civ. No. 2589. Fourth Dist.—May 22, 1941.]

SAFEWAY STORES, INC. (a Corporation), Respondent, v. KING LUMBER COMPANY (a Corporation), Appellant.

18

Charles V. Barfield and John H. Finger for Appellant.

Calvin H. Conron, Jr., for Respondent.

GRIFFIN, J.—Plaintiff and respondent brought this action to recover $337.32 from defendant and appellant on two counts, one based on money had and received, and the other based on a liability for prior endorsement of a check. The material allegations of the complaint were denied. The case went to trial on these issues with no affirmative defenses al-

leged. Findings of fact consistent with the allegations of respondent's complaint were made and judgment favorable to respondent on the first count was entered for the recovery of the principal sum plus interest from September 19, 1939. A motion for a new trial was made and denied. This appeal followed.

Appellant corporation, whose principal place of business was in Bakersfield, opened a branch lumber yard in Arvin, a town approximately twenty-five miles southeast of Bakersfield. The town had no banking facilities. A Mr. B. Oeschger was first employed by appellant corporation in the year 1936 in its Bakersfield Lumber Yard. In 1938 he was transferred to Arvin to open and act as manager of the company's new lumber yard. At Arvin his duties were to sell merchandise, to make statements of accounts of sales, to receive money and checks on account of sales, to advertise the business in Arvin newspapers, and to hire and discharge employees. He was also authorized to pay wages, advertising and petty cash transactions, from such money as was on hand. He made reports to the main office of all such transactions. These reports were made in compliance with the company's bookkeeping system which had been in effect since the year 1905. The system did not require him to differentiate between cash receipts and check receipts. Accordingly, it was impossible in the main office to determine whether any particular payment on account was a check or a cash transaction. About two months after opening the Arvin Yard, Oeschger embarked upon a practice of endorsing checks which he had received in the course of his duties in payment for merchandise sold and upon accounts opened, and cashing them at various places of business in Arvin. The endorsements were in the name of King Lumber Company, by Oeschger as manager. The claimed reason for doing this was that he needed cash to make disbursements in his business as manager. He cashed at least thirty such checks at respondent's Arvin store during the period of time between his arrival in Arvin and the transaction here involved. A Mr. Shields was respondent's manager at Arvin during that period. Oeschger also cashed numerous checks payable to King Lumber Company at the Arvin Drug Store, as often as twice a week, for the same claimed reason. This practice was discussed between the druggist and Shields, the Safeway Store manager. No trouble

of any kind had developed from Oeschger's practice of endorsing such checks and cashing them during this period. During all of this time Oeschger paid certain wages, advertising and miscellaneous small bills, and had actual authority to do so out of receipts from the business. Mr. King, an officer of appellant corporation, testified that no officer of the corporation had authorized Oeschger to endorse checks payable to the King Lumber Company.

Shortly before September 19, 1939, Oeschger presented to Shields a check drawn by one Ike M. Davis upon the Bank of America, payable to King Lumber Company in the amount of $337.32, and endorsed "King Lumber Company, by B. Oeschger," and asked to have it cashed, stating he needed change for the business. Shields at first refused to cash it. Later that day, Oeschger asked for a part of the money and Shields then gave him the entire amount to avoid bookkeeping. Shields forwarded the check to the Bakersfield main office of the Safeway Stores, Inc., and it was deposited for collection by that company but returned on account of some minor discrepancy. Shields then, on September 19, 1939, returned this check to Oeschger and took a receipt therefor. Two hours later Oeschger returned and delivered to Shields another corrected check. This check was then deposited through the Safeway account at the Anglo-California National Bank and cleared the Davis account at the Bank of America. The check was endorsed by the Safeway Stores, Inc., for deposit previous to a guaranteed endorsement of the Anglo-California National Bank.

It did not appear upon Oeschger's statements to the company that Davis had paid his account, due to Oeschger's omission to report the transaction. Mr. King, of the Lumber Company, inquired at the Arvin Branch about the Davis account. In checking over a list of delinquent accounts, according to the records kept thereof at the Bakersfield office, on November 4, 1939, he was told by Oeschger's assistant that the Davis account was paid. On November 15, 1939, an investigation of the Arvin office was made by Mr. King, and a $560 shortage was discovered.

Prior to that time the company claimed to have had no knowledge that Oeschger had been short in his accounts. It is also claimed that it had no knowledge that Oeschger had been endorsing checks. The firm had never notified any

Arvin merchant that Oeschger did not have authority to cash checks payable to King Lumber Company. There is no convincing evidence that Oeschger did not use the money received from the check in the business.

On December 21, 1939, three months after the check was cashed, the secretary of the appellant corporation filed an affidavit with the Bank of America to the effect that the endorsement, "King Lumber Company, by B. Oeschger, Manager", upon the check in question was a forgery. Davis was given credit upon his account with the company for the check. The King Lumber Company was reimbursed for Oeschger's shortage by its bonding company. On January 18, 1940, the amount of the check was apparently charged to the account of Safeway Stores, Inc., at the Anglo-California National Bank by the bank, and the check, together with the affidavit of forged endorsement, was given to respondent. Previously, the Bank of America had delivered the check and affidavit to the Anglo-California National Bank and charged its account. The funds so collected from the Safeway account by the Anglo-California National Bank were forwarded to clear the charge of the Anglo-California National Bank made by the Bank of America, and the Bank of America credited the funds to the King Lumber Company account. Appellant then delivered the funds to the bonding company. After a formal demand upon King Lumber Company for reimbursement, this action was filed on January 26, 1940.

It is appellant's contention that respondent was not forced to pay, by reason of its prior endorsement, the sum of $337.32 to the Anglo-California National Bank; that any such payment made by respondent to that bank was wholly voluntary; that the finding that the appellant endorsed the check for value received was contrary to the evidence; that the finding that appellant was indebted to respondent on account of monies had and received by appellant from respondent for the use and benefit of appellant was also unjustified. It is argued that upon payment of the check by the drawee bank, the transaction was closed, citing 9 C. J. S., page 722, section 354–a; and that payment to the holder in due course discharges the instrument, citing Civil Code, sections 3132, 3147 and 3200.

It is quite clear from the evidence that the affidavit and check were delivered to the Anglo-California National

Bank coupled with a demand for reimbursement. The Anglo-California National Bank being in possession of respondent's account, had a banker's lien and exercised it by charging the amount of the check to respondent's account. (Civ. Code, sec. 3054.) The Anglo-California National Bank previously had been compelled by the Bank of America to reimburse the latter bank, and it therefore became the duty and obligation of respondent to pay this amount to the Anglo-California National Bank. This payment was involuntarily made because the bank had and exercised a banker's lien upon respondent's account.

■ Primarily, ostensible authority is defined to be such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess. (Civ. Code, sec. 2317.) Ordinarily, as an abstract principle of law, an agent authorized to receive checks in payment for his principal may not have authority to endorse and collect the same. On the other hand, the course of dealing may be such as to give the agent apparent authority to do these very acts. This authority may be implied from the facts of the particular case. If a principal by his acts has led others to believe that he has conferred this authority upon his agent, he cannot be heard to assert, as against third persons who have relied thereon in good faith, that he did not intend to confer such power.

■ The issue was presented to the court whether Oeschger was permitted by appellant to conduct its business under such methods and for such a length of time as was sufficient to warrant the conclusion that he was authorized to endorse checks, and we are of the opinion that the evidence upon the subject supports the conclusion that Oeschger had the authority. The conduct of the agent with reference to appellant's business was sufficient to establish, by implication, that such authority was given notwithstanding the direct testimony of the principal that the agent had no such authority.

The only fair inference to be drawn from the facts is that the respondent knew and relied on the ostensible authority of Oeschger to perform the acts in question, and that there is abundant proof of want of ordinary care on the part of the appellant in the conduct of its business which was sufficient to lead respondent to believe that Oeschger was clothed with full and ample power and authority in the premises.

Where a principal makes it possible, through his acts, for his own agent to inflict injury, the result of such injury should not be passed on to innocent persons who have dealt with the agent in good faith under his apparent authority. The law forbids the principal to deny authority in the agent where his own conduct has invited those dealing with him to assume that the agent possessed such authority. In such a case, a principal is bound by his acts and is estopped by his own conduct from denying the authority of the agent to act. (*Robinson* v. *American Fish and Oyster Co.,* 17 Cal. App. 212 [119 Pac. 388].) █ Where, as here, an agent is by his principal put in charge of a business as the apparent manager thereof, he is clothed with apparent authority to do all things that are essential to the ordinary conduct of such business at that place, and third persons acting in good faith and without notice of, or any reason to suspect, any limitations of his authority, are entitled to rely on such appearance. (*Leavens* v. *Pinkham & McKevitt,* 164 Cal. 242 [128 Pac. 399] ; Civ. Code, sec. 2300.)

It is a familiar rule of law that where one of two innocent persons must suffer, the loss should be borne by him whose acts made the loss possible. (*Henry Cowell etc. Co.* v. *Santa Cruz Bank,* 82 Cal. App. 519 [255 Pac. 881].) The evidence fully supports the court's findings and the findings support the judgment based upon the common count for money had and received.

█ Finally, appellant complains about the allowance of interest from September 19, 1939, the date of the check, rather than from January 18, 1940, the date of the payment by respondent to the Anglo-California National Bank. The difference in this interest would amount to $7.80. The legal rate of interest upon a loan or forbearance of any money, or on accounts after demand or judgment rendered in any court of this state, is seven per cent. (Const., art. XX, sec. 22.) In the absence of an express contract, the law only awards interest on money from the time it falls due. (*City of Los Angeles* v. *City Bank,* 100 Cal. 18 [34 Pac. 510].) Whenever the debtor knows precisely what he has to pay, and when he has to pay, he shall be charged with interest if he neglects to pay. (*Meyer* v. *Buckley,* 22 Cal. App. 96 [133 Pac. 510] ; Civ. Code, sec. 3287; *Courteney* v. *Standard Box Co.,* 16 Cal.

App. 600 [117 Pac. 778] ; *Martyn* v. *Western Pac. Ry. Co.*, 21 Cal. App. 589, 596 [132 Pac. 602].)

It cannot be said that the money claimed fell due prior to the time respondent's bank account was charged with the amount. The *de minimis non curat lex* rule (2 Cal. Jur., pp. 1009, 1010, sec. 600) is probably applicable. Nevertheless, the judgment pertaining to the interest should be and is modified by deducting interest in the amount of $7.80.

As so modified, the judgment is affirmed. Respondent to recover costs on appeal.

Barnard, P. J., and Marks, J., concurred.