[No. B123203. Second Dist., Div. Seven. Dec. 5, 2001.]

In re the Marriage of URSULA A. and WILLIAM F. HUBNER.
URSULA A. HUBNER, Appellant, v.
WILLIAM F. HUBNER, Appellant.

176

## COUNSEL

Lurvey & Shapiro, Judith Salkow Shapiro and Ira H. Lurvey for Appellant Ursula A. Hubner.

Kolodny & Anteau, Stephen A. Kolodny, William J. Glucksman; and Honey Kessler Amado for Appellant William F. Hubner.

## OPINION

BOLAND, J.*—

### SUMMARY

This appeal—the third in this marital dissolution action—involves a dispute over the appropriate amount of child support due a child of a wealthy parent. Consistent with the principle that child support must be measured by the standard of living attainable by the parent's income, we conclude the trial court must be presented with sufficient information on which to properly assess the child's needs. Such information includes the amount of the supporting parent's actual income where that amount is disputed. The action

---

*Associate Justice of the Court of Appeal, Second Appellate District, Division Eight, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

is remanded to enable the court to obtain reliable information as to the supporting parent's income, and to make a guideline child support calculation based thereon.

Both parties also contend the trial court erred in setting child support at $19,000 per month. The mother contends the amount is too low in light of the father's extraordinarily high income, while the father insists it is too high and exceeds the child's needs. In light of flaws in the trial court's methodology for calculating child support, we conclude this portion of the appeal is not yet ripe for review and must be dismissed.

Finally, we conclude the trial court erred in suspending the father's obligation to pay child support during the period in which his 18-year-old child was participating in a high school foreign exchange program in Japan.

## FACTUAL AND PROCEDURAL BACKGROUND

After a marriage of about four years, William F. and Ursula A. Hubner separated in October 1979. Their son, Ryan, with whom William has never had any contact, was born March 25, 1980. From Ryan's birth until early 1987, William paid $600 per month in child support. In 1990, in response to Ursula's petition for increased child support, William was ordered to pay child support of $6,000 per month, retroactive to March 1987. That order was based on the trial court's finding that, among other things, Ursula had sole legal and physical custody of Ryan, and William's stipulation that he had a net disposable income of at least $1 million per year and the ability to pay any reasonable child support order.

In October 1997, Ursula filed an order to show cause (OSC) requesting modification of the existing order to increase Ryan's child support to the guideline level. (Fam. Code, § 4055.) Ryan was approximately 17½ years old when the petition was filed.

In a declaration in support of her petition for modification, Ursula stated that a number of events had occurred since the 1990 support order was made, any one of which constituted a changed circumstance warranting an increase in child support. Ursula first noted that the manner and presumptions regarding the calculation of child support under the statewide uniform guidelines had changed since the previous support order. She argued that in contrast to the family court procedures followed in 1990, the statutory changes placed a burden on William to prove he was an extraordinarily high earner, and that the child support presumptively awarded under a guideline calculation would exceed Ryan's needs.

In support of her request for an increased child support order, Ursula also noted Ryan's desire to participate in an American Field Service (AFS) academic foreign exchange program in Japan during the 1998-1999 school year. Ursula anticipated the expenses for Ryan's participation in the AFS program would exceed $25,000. In addition, Ursula noted Ryan needed funds for a car, car insurance, gasoline and repairs, a personal computer and software, participation in sports and social activities, and medical and mental health care. Ursula also said that after graduation Ryan anticipated attending a private college at an expense of approximately $150,000.

Ursula conceded she should not have waited until Ryan was almost 18 years old to seek a modification of the child support order. She said, she had known for some time the award was inadequate, but, anticipating William's argument, had been unable to "summon the psychological stamina necessary to face another battle with Bill." Ursula declared that she suffered from "debilitating migraine headaches and severe depression." She also declared she had only a high school education and that because of her limited education and training and the fact that she had devoted herself to raising Ryan, she was unable to earn more than a minimal, sporadic income.

The income and expense declaration which accompanied the petition listed Ursula's monthly expenses at $13,344, her gross annual earnings for 1996 at $6,000, and her net monthly disposable income at $500.

In November 1997, Ursula noticed William's deposition and served him with a request to produce detailed financial documentation. William moved for a protective order to quash the subpoena issued for his deposition and document production. He argued that discovery of his personal financial information was an impermissible invasion of his right of privacy, and was irrelevant to the matters at issue. In support of his motion, William submitted an "admission," signed only by his counsel, stating "his annual earned income . . . is at least $1,750,000.00, pre-tax . . . he lives a lifestyle commensurate with a person earning $1,750,000.00 per year, pre-tax . . . [and,] he has the ability to pay any reasonable and lawful child support . . . order made by the Court." William argued his admission established his status as an "extraordinarily high income earner" (Fam. Code, § 4057, subd. (b)(3)), and relieved him from the obligation to comply with Ursula's discovery requests.

Ursula moved to compel William's deposition and document production. She also made an alternative request that, in the event the court declined to order William to appear for deposition or to produce the requested financial information, the court find William's annual net income available to pay child support was at least $5 million.

The motion for a protective order and the motion to compel were heard together on December 10, 1997. The court granted William's request for a protective order and denied Ursula's motion to compel. However, William was ordered to bring to the OSC hearing for court review the following week, a completed income and expense declaration, his recent tax returns, and any other income-related information required by the local rules or the California Rules of Court. William was also ordered to provide copies of his tax returns to Ursula's counsel and her forensic accountants in advance of the OSC hearing, subject to a confidentiality order.

William subsequently filed a response to Ursula's petition to modify child support in which he objected to any increased child support for Ryan, and objected to any requirement to pay child support during Ryan's participation in the AFS program.

Ursula then sought reconsideration of the ruling granting William's request for a protective order. She argued that William's opposition to any increase in his child support obligation evidenced a wrongful attempt on his part to obtain the discovery protection available to an extraordinarily high earner who had agreed to pay any support award based on an assumed income. The court partially granted Ursula's motion and ordered William to submit to a limited deposition regarding the "general attributes of [his] lifestyle." The court also reaffirmed the earlier order requiring William to provide copies of various financial documents.

The hearing on Ursula's modification petition was convened on February 5, 1998. At the outset, William's counsel revealed that contrary to court order, William had not provided any financial information to Ursula or to the court. William's counsel reported William had "decline[d] to produce [his] tax returns," and informed the court it should simply "proceed from there." Ursula's counsel argued a guideline child support calculation could not be made in the absence of information about William's actual gross income. Concluding it might not "be productive" to enforce its earlier order, the court stated its intention to proceed without the financial information. It noted it was "not inconceivable" that, based on an assessment of Ryan's needs, it would order an amount that fell below the guideline even at William's admitted income. However, the court stated it intended to assume the "worst possible tax situation" for William, i.e., by basing its calculation on an after-tax $1.75 million annual income, which is an annual income of roughly $3.5 million in pretax dollars.

At the conclusion of the hearing, William was ordered to pay child support of $19,000 per month from November 1997 through March 1998,

when Ryan turned 18 years of age. However, William's child support payments were ordered suspended during Ryan's participation in the AFS program in Japan. However, the support was ordered reinstated in February and March 1999, following Ryan's return from Japan and re-enrollment in high school, until his 19th birthday.

At a subsequent hearing, the court set forth the findings that formed the bases of the support order. (Fam. Code, §§ 4056, subds. (a), (b), 4005.) It found William was an extraordinarily high earner within the meaning of Family Code section 4057, subdivision (b)(3), with an annual income of at least $1.75 million. It also stated it had "indulged in all the worst findings [it] could make with respect to tax consequences" to William. Indulging in "slightly higher" findings than William's admitted income, the court found William had a monthly after-tax income of approximately $150,000 ($288,000 per month pretax), but failed to state the precise guideline amount of child support the income figure would yield. Without identifying specific past or projected future expenditures, the court found that monthly child support of $19,000 would enable Ryan to share in William's standard of living, but "anything over $19,000 would be excessive and not consistent with [Ryan's] reasonable needs." The court emphasized that although its conclusion as to the appropriate amount of support was not based solely on Ryan's actual historical expenses or the mere necessities of life, it was "not, in essence, creating a college fund." Support payments were ordered suspended while Ryan was in the AFS program in Japan because during that period he would not be "a full-time student working towards a [high school] diploma." Ursula requested reconsideration of the order based on evidence she received after the OSC hearing that showed Ryan would receive credit on his home high school transcript for courses taken at his host high school in Japan. Ursula's request was denied.

An order modifying child support was entered in April 1998. These appeals followed.

## Discussion

Ursula argues the trial court erred in basing the child support order on William's "admitted" income, when the appropriate amount of child support remained in dispute. Ursula also contends the $19,000 monthly child support awarded was deficient and was based on an erroneous interpretation of Ryan's "reasonable needs." Finally, she argues the suspension of child support payments while Ryan participated in the AFS program in Japan was erroneous.

In his appeal, William insists the monthly support order was excessive by a factor of $9,000.

1. *The guideline child support calculation must be tethered to the supporting parent's actual income.*

Family Code section 4055[1] sets forth a statewide uniform guideline for determining the appropriate amount of child support. The term "guideline," however, is a euphemism. The support amount rendered under the guideline's algebraic formula "is intended to be presumptively correct in all cases, and only under special circumstances should child support orders fall below the child support mandated by the guideline formula." (§ 4053, subd. (k); see also §§ 4050, 4057, subd. (a).) One special circumstance involves cases where evidence shows that the application of the formula is unjust or inappropriate under the circumstances because "[t]he parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." (§ 4057, subd. (b)(3).)

■ Even under such circumstances, however, "[t]o comply with federal law, the court shall state . . . whenever [it] is ordering an amount for support that differs from the statewide uniform guideline formula . . . [¶] (1) The amount of support that would have been ordered under the guideline formula[;] [¶] (2) The reasons the amount of support ordered differs from the guideline formula amount[; and] [¶] (3) The reasons the amount of support ordered is consistent with the best interests of the children." (§ 4056, subd. (a).) The statutory findings are mandatory. The failure to make them precludes effective appellate review and may constitute reversible error if the missing information is not otherwise discernible from the record. (See *In re Marriage of Hall* (2000) 81 Cal.App.4th 313, 320-321 [96 Cal.Rptr.2d 772]; *Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1450-1451 [58 Cal.Rptr.2d 354].)

■ The supporting parent who seeks to rebut the statutory formula and gain protection from disclosure of detailed financial information as an "extraordinarily high earner" must show: (1) he or she has an extraordinarily high income, and (2) the guideline support amount exceeds the child's needs. When the extraordinarily high earning supporting parent seeks a downward departure from a presumptively correct guideline amount, it is that parent's "burden to establish application of the formula would be unjust or inappropriate," and the lower award would be consistent with the child's best interests. (*County of Stanislaus v. Gibbs* (1997) 59 Cal.App.4th 1417, 1424 [69 Cal.Rptr.2d 819]; §§ 4053, subd. (k), 4057, subd. (b)(3), and 4056, subd. (a)(3).)

William's status as an extraordinarily high earner is conceded. ■ Thus, the issue we address is whether William, as an extraordinarily

---

[1] Unless otherwise noted, all further statutory references are to this code.

high earner who admits an ability to pay any amount of child support, may refuse to reveal his actual income where the appropriate amount of child support remains disputed.

■ An award of child support rests in the court's sound discretion and cannot be overturned absent a showing of a clear abuse of discretion. "An appellate court does not substitute its own judgment; rather it interferes only if no judge could reasonably have made the order under the circumstances." (*In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 553 [251 Cal.Rptr. 370].) However, before a court may exercise its discretion to determine that a deviation from the guideline is warranted under the circumstances, it must first calculate the amount of support required by strict adherence to the guideline. In other words, only after the guideline formula is computed on a legitimate evidentiary basis as to the supporting parent's income may a court conclude that the guideline amount exceeds the child's reasonable needs. (*In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 144-145 [61 Cal.Rptr.2d 559]; *Johnson v. Superior Court* (1998) 66 Cal.App.4th 68, 75-76 [77 Cal.Rptr.2d 624].) The Family Code similarly supports such a conclusion. Under section 4056, if the amount of support ordered differs from the statutory formula, the court "shall state, in writing or on the record," the "amount of support that would have been ordered under the guideline formula." (§ 4056, subd. (a).)

■ Accordingly, we agree with Ursula's contention that, absent a stipulation between the parties as to the appropriate amount of support, she and the court are entitled to know William's actual income, regardless of his admission he can pay any reasonable child support ordered. Concluding to the contrary, the court relied heavily on *Estevez v. Superior Court* (1994) 22 Cal.App.4th 423 [27 Cal.Rptr.2d 470] (*Estevez*), decided not long after the enactment of the mandatory child support guideline formula. That reliance was misplaced.

In *Estevez*, the noncustodial supporting parent (Estevez) resisted disclosing specific information about his lifestyle and financial status. Instead, he unilaterally stipulated his gross income was "not less than" $1.4 million per year. (*Estevez, supra*, 22 Cal.App.4th at pp. 427, 430.) Estevez also stipulated he could pay any reasonable child support award, and told the court he would willingly "accede to any order [it might] make, even one in excess of the amount called for by the guideline formula, so long as the award addresse[d] the reasonable needs of the children commensurate with his status as an extraordinarily high earner." (*Id.* at pp. 430-431.) In that case, the custodial parent (Salley) conceded Estevez had an extraordinarily high income, and she was "not dissatisfied" with the amount of the total support

"package," which exceeded $14,000 per month for two children. Rather, Salley took issue with the manner in which the child support was disbursed.[2] (*Id.* at p. 426.) Under the circumstances, the reviewing court held detailed financial discovery was irrelevant to a determination of a child support amount paid by an extraordinarily high earner who stipulated he could and would pay any reasonable amount of child support.[3] (*Id.* at p. 431.) *Estevez* finessed the issue of the statutorily required findings by concluding if the extraordinarily high earning parent challenged the amount of child support as unreasonable he would be required to disclose the necessary financial data required to enable the court to apply the guideline formula. (*Id.* at p. 431, fn. 8.) Alternatively, the Court of Appeal concluded the judicial findings required by section 4056 could be satisfied if the trial court simply made the "least beneficial assumptions" as to the high earner's net disposable income, federal tax-filing status, and deductions from gross income. (*Estevez,* at p. 431.)

*Estevez* did not resolve the conflict presented here between the custodial parent's right to discovery and the noncustodial supporting parent's right to privacy, where a discrepancy exists between the supporting parent's proposed stipulated income and the other parent's contention that the proposed stipulated income was too low. That issue was recently addressed in *Johnson v. Superior Court, supra,* 66 Cal.App.4th 68 (*Johnson*), which governs the result in this case.

In *Johnson,* decided shortly after entry of the order issued here, a professional athlete (Johnson) conceded an annual income in excess of $1 million. The custodial parent (Tate) claimed Johnson's annual income was actually $12 million, and propounded discovery to elicit evidence regarding his income, assets and lifestyle. (*Johnson, supra,* 66 Cal.App.4th at p. 70.) Johnson resisted the discovery arguing that, under *Estevez,* he was not required to reveal information about his income and lifestyle. (*Ibid.*) Relying on *Estevez,* discovery into Johnson's income was precluded, but Tate was permitted to conduct detailed discovery as to the attributes of his lifestyle. (*Ibid.*) Johnson sought a writ of mandate challenging the denial of his request for a protective order.

---

[2]Estevez had been ordered to pay child support of $3,500 per month, plus various health care costs. In addition to that amount, Estevez or his parents voluntarily supplemented the support "package" by paying for child care, a housekeeper, vacations, food, transportation, private schooling, miscellaneous expenses, and providing a four-bedroom home with beach and tennis facilities. (*Estevez, supra,* 22 Cal.App.4th at pp. 425-426.)

[3]In contrast to the stipulation approved in *Estevez,* the "admission" at issue here is problematic for two reasons. First, because the "admission" was not made by William, but by his attorney, it is of questionable evidentiary value. Second, while William "admits" his ability to pay any support order the court may make, he has not professed any willingness to do so.

While the Court of Appeal in *Johnson* professed agreement with *Estevez*, it took issue with the conclusion in *Estevez* that financial information was irrelevant to the needs of a child of an extraordinarily high earning supporting parent. (*Johnson, supra,* 66 Cal.App.4th at p. 74.) However, the court agreed with Johnson that detailed discovery into his lifestyle was unwarranted and found that a child's support needs must be measured by the standard of living attainable by the supporting parent's income, regardless of his lifestyle or actual expenditures. (*Id.* at pp. 75-76.) Since *Johnson*, the rule in *Estevez*—that an extraordinarily high earner's financial information need not be disclosed where he stipulated he can and will pay any reasonable amount of child support—has been limited to cases in which the parties agree on the appropriate amount of child support. (See, e.g., *McGinley v. Herman* (1996) 50 Cal.App.4th 936, 944 [57 Cal.Rptr.2d 921] ["[I]t is significant that *Estevez* did not involve a dispute over the amount of child support . . . ."].) And, given *Johnson*'s preclusion of discovery regarding the supporting parent's "lifestyle," income clearly is the primary factor in a child support determination in the case of an extraordinarily high earner.

As in *Johnson*, we address the tension between the extraordinarily high earner's desire for protection from discovery and the necessity that a trial court be presented with sufficient information to properly assess the child's needs. (*Johnson, supra,* 66 Cal.App.4th at p. 74.) We agree with the rule expressed in *Johnson* that, where the parties dispute the amount of the high earner's income and cannot agree on the appropriate amount of child support, the court must make the least beneficial income assumptions against the supporting parent. (*Id.* at pp. 74-75.)

The court did make such assumptions here. However, it erred when it based assumptions on a fictional annual pretax income of $3.5 million for William for the purposes of the guideline calculation, a figure neither suggested nor substantiated by either party. "The key financial factor in the guideline formula is net disposable income." (*Johnson, supra,* 66 Cal.App.4th at p. 75; §§ 4055, subd. (b), 4059.) The application of the least beneficial assumptions as to net disposable income "cannot be made in a vacuum but must be based on reason." (*Johnson*, at p. 75.) In other words, in a case such as this, such assumptions can be made only after the court obtains a legitimate factual basis as to the amount of the high earner's actual annual income.

Ursula claims William's net annual income exceeds $5 million. William, on the other hand, "admits" an annual income of $1.75 million. The one point of agreement is that William has prevented Ursula from acquiring any information about his actual financial status.

We agree with *Johnson* that the determination of the appropriate amount of child support could be affected by the significant discrepancy between two equally unsubstantiated figures. Given the flawed premise on which the modification order was based, a reversal is required. Both parties insist the court abused its discretion in awarding monthly child support of $19,000. Because the amount of child support ordered was based on fictional gross income assumptions, we are unable to assess whether either party is correct. Thus, remand is necessary to permit the court to conduct further proceedings and permit appropriate discovery directed at obtaining reliable information to enable the court to "make assumptions with respect to [William's] income and lifestyle [at the time of the OSC] that are least favorable to him," and to protect William's legitimate privacy concerns regarding his finances. (*Johnson, supra,* 66 Cal.App.4th at pp. 75-76.)

> 2. *The issue as to whether the appropriate amount of child support was awarded is not yet ripe.*

As stated above, both parties argue the award of monthly child support of $19,000 was an abuse of discretion. Ursula contends the amount of the award is deficient, while William insists it is excessive.

California law regarding child support is clear: " '[A] child . . . is entitled to be supported in a style and condition consonant with the position in society of its parents.' [Citation.] 'The father's duty of support for his children does not end with the furnishing of mere necessities if he is able to afford more.' [Citation.]" (*McGinley v. Herman, supra,* 50 Cal.App.4th at p. 941.) " 'Clearly where the child has a wealthy parent, that child is entitled to, and therefore 'needs' something more than the bare necessities of life.' " (*Johnson, supra,* 66 Cal.App.4th at p. 72.) After *Johnson,* a parent's "ability" to support a child may depend upon whether the supporting parent is merely rich or is very rich, and "this discrepancy can affect the [trial court's determination as to the] child's needs." (*Id.* at p. 74.) Because the court failed to make a guideline calculation based on William's actual income, we are unable to assess the merits of any argument as to whether the child support determination was an abuse of discretion. This portion of the appeal is dismissed because it is not yet ripe for judicial review.

However, even if a factual basis existed for William's assumed $3.5 million annual income, we would be unable to adequately assess, based on the record, whether the monthly $19,000 child support award is appropriate. The court failed to make findings mandated by section 4056. On remand, in the event the court determines a guideline departure is warranted, it is

directed to comply with the requirements of section 4056 by specifying (1) the child support amount calculated under the guideline formula, (2) the reasons for awarding an amount of support that deviates from the formula, and (3) the reasons the award is consistent with Ryan's best interests. (§ 4056, subd. (a).) Such findings not only will enable the parties to appreciate the basis for the child support order, they will facilitate judicial review in any future appeal.

3. *The suspension of child support while Ryan attended school in Japan was erroneous.*

■ Ursula's final contention is that the court erroneously suspended William's child support obligation following Ryan's 18th birthday during his participation in the AFS program in Japan. We agree.

Section 3901 provides that a parent's "duty [to support a child] continues as to an unmarried child who has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or attains the age of 19 years, whichever occurs first." (§ 3901, subd. (a).) Child support payments were ordered suspended during Ryan's participation in the AFS program, and then reinstated payments upon his re-enrollment in his local high school until his 19th birthday. The order was based on a determination that the AFS program was "not within the purview of Family Code section 3901" because, during Ryan's participation in the program, he would not be "working towards a [high school] diploma."

In reaching its conclusion, the court apparently superimposed one of two improper requirements on the statute. Either Ryan was required to demonstrate he was making a good faith effort to complete high school as soon as possible in order to be eligible for continued child support, or to take courses necessary to graduate while in the AFS program in order to qualify as a full-time student. Neither requirement, however, is a prerequisite to Ryan's continued eligibility for child support.

The uncontradicted evidence demonstrates Ryan was expected to attend classes six days a week at his host high school in Japan. Upon application, Ryan was eligible to receive credit at his local high school, Mater Dei, for many of the courses completed in Japan. The language of the statute clearly states that the parent's duty of support continues so long as a child over age 18 remains a "full-time high school student." (§ 3901, subd. (a).) Under

section 3901, only full-time school attendance is necessary to trigger a parent's obligation to continue to support a child who has reached the age of majority. William asserts that Ryan's desire to participate in the AFS program was intended to "hinder[] his timely graduation," forcing him to continue to provide for his son's support beyond the date on which William reasonably could have expected that obligation to cease. We disagree.

The statute does not require a supported child to demonstrate a good faith effort to graduate from high school as soon as possible, nor does it condition a parent's duty of support on the child's participation only in those classes that propel her or him toward graduation at the earliest possible date. Indeed, the legislative history illustrates that, to the extent the Legislature was concerned a child might abuse the child support scheme by extending his or her high school education in order to continue receiving support, the risk of such abuse was eliminated by imposing an absolute support cutoff at age 19, regardless of the child's educational status.

Ryan's exemplary academic progress and excellent standing at his local high school afforded him an opportunity to participate in the prestigious and demanding AFS high school Japan exchange program, a privilege Ursula claims was afforded only 18 students in the entire United States. The evidence proffered by Ursula included a declaration from the Mater Dei assistant principal, stating the courses Ryan took at his host high school in Japan would benefit him in the college application process, would become part of his school transcript, and would count toward his graduation from high school. On this record, we cannot agree with William's implicit assertion Ryan created or pursued this unique academic enrichment opportunity solely for the purpose of receiving additional months of child support. Based on the evidence and clear language of section 3901, we conclude the court erred in suspending William's support obligations.[4]

## DISPOSITION

The order is reversed with regard to modification of the amount of child support, and the cause remanded to permit the trial court to conduct further

[4]Ursula's request to take judicial notice (Request) is granted as to William's 1989 stipulated income, and our earlier unpublished opinion in this matter. The remainder of the Request is denied. Also denied are Ursula's motion to dismiss cross-appeal and motion to strike portions of reply on cross-appeal that misrepresent record. The former is moot in light of our dismissal of certain portions of this appeal, and the latter unnecessary given our conclusion. William's motion to strike (Ursula's) motion to strike portions of reply on cross-appeal is denied.

proceedings, as necessary, in order to make the requisite findings. (Fam. Code, § 4056.) The order is also reversed with regard to the duration of the child support award. The portion of Ursula's appeal directed to the propriety of the amount of child support ordered is dismissed, as the issue is not yet ripe for adjudication. William's appeal, which also takes issue with the amount of child support awarded, is likewise not ripe for decision and is dismissed. Appellant Ursula is to recover her costs on appeal.

Johnson, Acting P. J., and Woods, J., concurred.

A petition for a rehearing was denied January 7, 2002, and on December 20, 2001, the opinion was modified to read as printed above. The petition of appellant William F. Hubner for review by the Supreme Court was denied March 13, 2002.