[No. B168112. Second Dist., Div. Seven. Nov. 17, 2004.]

In re the Marriage of WILLIAM F. and URSULA V. HUBNER.
WILLIAM F. HUBNER, Appellant, v.
URSULA V. HUBNER, Respondent.

COUNSEL

Law Office of Ray T. McCullough and Ray T. McCullough for Appellant.

Judith Salkow Shapiro for Respondent.

OPINION

**JOHNSON, J.**—A father appeals from an order finding him delinquent in his child support payments and assessing him a statutory interest penalty. He argues interest should not have accrued until the effective date of this court's remittitur reinstating his child support obligations for the period his child

participated in an American Field Service program in Japan. He also argues child support was not owed until he was provided satisfactory proof none of the contingencies had occurred which would have terminated his child support obligations as a matter of law. Absent this proof, he argues, his withholding of child support payments cannot be deemed "egregious" as is required before penalties may be imposed. We affirm.

## FACTS AND PROCEEDINGS BELOW

William and Ursula Hubner were married in June 1975 and separated in October 1979 after a marriage of about four years. Their son, Ryan, with whom William has never had any contact, was born on March 25, 1980. A judgment of dissolution of marriage was entered in November 1980.

From Ryan's birth until early 1987, William paid $600 per month in child support. In 1990, in response to Ursula's petition for increased child support, William was ordered to pay child support of $6,000 per month, retroactive to March 1987. That order was based in part on findings Ursula had sole legal and physical custody of Ryan and William's stipulation he had a net disposable income of at least $1 million per year and the ability to pay any reasonable child support order. Under the then statutory guidelines, the order for child support could have been at least $10,800 per month.

In October 1997, Ursula filed an order to show cause to modify the 1990 child support order to the "guideline level."[1] Instead of submitting to Ursula's requests for discovery, William filed an "admission" stating his annual pretax income exceeded $1,750,000, he enjoyed a lifestyle commensurate with a person earning $1,750,000 per year, pre-tax, and he had the ability to pay any reasonable and lawful child support order.[2] William claimed his admission established his status as an "extraordinary high income"[3] earner which in turn relieved him from any obligation to comply with Ursula's discovery requests.

The court ordered William to pay $19,000 per month from November 1997 through March 1998, when Ryan would turn 18 years old. However, the court decided Ryan would not be a full-time high school student, and thus not

---

[1] Family Code section 4055. All further statutory references are to the Family Code unless otherwise noted.

[2] *In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 181 [114 Cal.Rptr.2d 646].

[3] To rebut the statutory presumption the guideline amount is correct, the supporting parent may produce evidence he or she "has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." (§ 4057, subd. (b)(3).)

entitled to support,[4] during the time he participated in an American Field Service program in Japan as a foreign exchange student. The court's order thus suspended William's obligation to pay child support during this period, to be reinstated when Ryan returned to high school after his return from Japan and until Ryan's 19th birthday.

Both Ursula and William appealed from the court's order. In December 2001, we issued our opinion in *In re Marriage of Hubner*.[5] We found the trial court erred in suspending William's child support obligation during the period Ryan participated in the American Field Service program.[6] We also remanded the matter to determine an appropriate amount of child support consistent with the statutory guidelines.[7]

In the meantime William made no child support payments all during the 12-month period following Ryan's 18th birthday, from April 1998 through March 1999, pursuant to either the original order for $6,000 per month or the modified order for $19,000 per month.

Ryan participated in the American Field Service program and attended school full time while in Japan. He returned to Mater Dei High School in Orange County to complete his senior year in high school. Ryan turned 19 years old on March 25, 1999. He graduated from Mater Dei High School in May 1999.

In June 2002, Ursula brought a motion to determine arrearages. Ursula's motion sought to collect at least the $6,000 per month due under the 1990 child support order, pending release of William's financial information to determine a proper guideline amount of support as directed by this court. The trial court granted Ursula's motion without prejudice to her seeking a new modified support order based on the statutory guidelines. The court stated, "I think that she is entitled to enforce the order which is currently in effect. And the order currently in effect per the Court of Appeal is $6,000 a month until such time as Ryan finished his AFS and graduated [f]rom Mater Dei. [¶] . . . [¶] . . . And turned 19. I think that is clearly what the Court of Appeal was saying. And it's up to her if she wants to run around and try to collect it right now."

---

[4] Former section 3901, subdivision (a) specified "[t]he duty of support imposed by Section 3900 continues as to an unmarried child who has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or attains the age of 19 years, whichever occurs first."

[5] *In re Marriage of Hubner, supra,* 94 Cal.App.4th 175.

[6] *In re Marriage of Hubner, supra,* 94 Cal.App.4th 175, 188–189.

[7] *In re Marriage of Hubner, supra,* 94 Cal.App.4th 175, 187–188.

William's counsel inquired how interest on the unpaid amount should be handled because the time period involved two different child support orders: one for $6,000 a month and the other for $19,000 per month. The court noted the only valid support order was for $6,000 per month and interest on that amount "accru[ed] when they weren't paid on time." The court noted the fact the subsequent child support order for $19,000 per month was "reduced to $6,000 is not going to be a basis for eliminating the right to collect interest on the $6,000."

The court issued its order for arrearages on September 11, 2002. Ursula served William notice of the court's order the next day. The notice, based on the court's rulings, stated he owed child support "commencing April 1998, in the total principal sum of $78,000, plus statutory interest." In October 2002, William paid $12,000 toward his past due child support obligation. He paid nothing more.

In June 2003, Ursula served William with a notice of delinquency. Ursula's notice stated she would seek penalty interest on the delinquent balance in accordance with section 4722.[8] William responded by filing his own petition to determine arrearages. He claimed he was not delinquent because: (1) he paid $6,000 per month until May 1998, when Ryan would have otherwise graduated from high school but for his participation in the American Field Service program; (2) Ryan did not submit proof he satisfied the necessary conditions for child support until age 19; (3) the appropriate amount of child support had yet to be conclusively determined; (4) during the time Ryan was in Japan he spent considerably less than $6,000 per month; (5) if the court ultimately ordered less than $6,000 per month in the still-pending request for modification it would not serve the interests of justice to require him to seek reimbursement from Ursula who admittedly had no means to repay any amount; and (6) if the court ultimately ordered more than $6,000 per month as appropriate child support then the amount now claimed to be delinquent would be subsumed in any final order in any event.[9] William argued because of these circumstances his nonpayment could not be considered egregious. He

---

[8] Section 4722 governs notice of delinquent support payments and statutory penalties on delinquent balances. This section provides:

"(a) Any person with a court order for child support, the payments on which are more than 30 days in arrears, may file and then serve a notice of delinquency, as described in this chapter.

"(b) Except as provided in Section 4726 [listing conditions for possibly avoiding statutory penalties], and subject to Section 4727 [limiting monthly interest to 6 percent with an overall cap of 72 percent of the original amount due], any amount of child support specified in a notice of delinquency that remains unpaid for more than 30 days after the notice of delinquency has been filed and served shall incur a penalty of 6 percent of the delinquent payment for each month that it remains unpaid, up to a maximum of 72 percent of the unpaid balance due."

[9] We granted Ursula's request to take judicial notice of a prior unpublished decision concerning the same parties and subject matter. (Evid. Code, §§ 452, 459.) We also agreed to

thus requested no penalties be imposed for his failure to pay. Finally, William argued, even if the court determines he is in arrears in his child support payments then interest should only begin to accrue on the arrearages from December 20, 2001, the date of this court's decision finding the trial court erred in suspending his liability for child support during the time Ryan spent as a foreign exchange student in Japan.

At the conclusion of the hearing the trial court ordered, "in accordance with its earlier ruling in September 2002," the 1990 order directing William to pay child support in the amount of $6,000 per month remained in effect, and that statutory interest accrued "from the date each such payment was due, commencing April 1, 1998 through March 1999 . . . ." Accordingly, the court entered an order for child support in the principal sum of $72,000 plus accrued interest of $21,006.58 for a total of $93,006.58.

At the hearing, William admitted he had not tendered payment until 60 days after receiving service of Ursula's notice of delinquency. The trial court found his failure to pay the arrearages, despite notice of its order in September 2002, and despite his ability to do so, was sufficiently egregious to justify imposition of the interest penalty for the two months he failed to pay after receiving Ursula's notice of delinquency. On the other hand, the court found William's argument interest should only accrue from the date of this court's opinion reversing the suspension order was not so patently frivolous, or otherwise so clearly resolved in its 2002 order, to warrant an award of sanctions.

William appeals from the court's order.[10]

---

take judicial notice of the trial court's subsequent order determining the appropriate amount of child support was $36,617 per month, based on William's financial documentation showing he had a net worth of over $127 million during the relevant period.

[10] We granted Ursula's request to strike those portions of William's opening brief which reargued the merits of the order striking his motion to disqualify the trial judge. We had previously resolved this issue against him in an order denying his petition for writ of mandate. (*Hubner v. Superior Court* (Apr. 3, 2003, B165976) [summary denial by order].) Also, as William now acknowledges, an order striking a motion to disqualify is not an appealable order in any event. (See, Code Civ. Proc., § 170.3, subd. (d) [appellate review is strictly by writ of mandate].)

However, we decline Ursula's request sanctions be imposed against William for filing a frivolous appeal. In the case of *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179] our Supreme Court instructed "an appeal should be held to be frivolous only when it is prosecuted for an improper motive-to harass the respondent or delay the effect of an adverse judgment-or when it indisputably has no merit-when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Id.* at p. 650.)

This appeal will not delay the effect of the adverse order because William has in the interim paid the support arrearages, interest and penalty. In addition, the remaining issues in this appeal are not, in our view, so patently and completely without merit sanctions are warranted.

## DISCUSSION

### I. THE TRIAL COURT CORRECTLY RULED STATUTORY INTEREST ACCRUED FROM THE DATE EACH UNPAID CHILD SUPPORT PAYMENT WAS ORIGINALLY DUE, BEGINNING IN APRIL 1998 AND CONTINUING THROUGH MARCH 1999.

William argues statutory interest on the arrearages should have only begun to accrue from the date the remittitur issued in this court's decision in *In re Marriage of Hubner*, that is when the decision became final, or March 27, 2002. His argument is not supported by the law or record in this case.

Statutory interest on unpaid child support payments accrues as a matter of law as to each installment when each installment becomes due. This is true whether the judgment clearly states when or if interest will accrue on unpaid child support obligations, and whether or not the payor parent was personally notified unpaid child support would be subject to accruing interest.[11]

Accrued arrearages are treated like a money judgment for purposes of assessing statutory interest.[12] Unless otherwise specified in the judgment, interest accrues as to each installment when each installment becomes due and continues to accrue for so long as the arrearage remains unpaid.[13] Consequently, notwithstanding changed circumstances, or a claimed lack of clarity in a court's order assessing child support arrearages, courts have no authority to waive or forgive interest accrued on past-due child support amounts, just as courts cannot retroactively modify or terminate the arrearages.[14]

The question William poses is when did his present obligation become due. Was it April 1998 because Ryan continued to be a full time high school student? Or, as William claims, did it only become due after this court's decision became final holding William remained obligated to pay child support while Ryan pursued his high school education as a foreign exchange student? He cites no authority for his argument. Indeed, existing law is to the contrary.

---

[11] *In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1057 [48 Cal.Rptr.2d 882]; *County of Los Angeles v. Salas* (1995) 38 Cal.App.4th 510, 516 [45 Cal.Rptr.2d 61].

[12] *In re Marriage of Perez* (1995) 35 Cal.App.4th 77, 80 [41 Cal.Rptr.2d 377].

[13] California Constitution, article XV, section 1; Code of Civil Procedure sections 685.010, subdivisions (a) and (b), 685.020, subdivision (b); *County of Los Angeles v. Salas, supra,* 38 Cal.App.4th 510, 513–514; *In re Marriage of Perez, supra,* 35 Cal.App.4th 77, 81.

[14] *In re Marriage of Cordero* (2002) 95 Cal.App.4th 653, 667 [115 Cal.Rptr.2d 787]; *In re Marriage of Perez, supra,* 35 Cal.App.4th 77, 81.

■ As with all civil judgments which are affirmed, or as in this case, modified on appeal, postjudgment interest accrues from the date of the original judgment, rather than from the judgment following the remittitur.[15] The decision in *Espinosa v. Rossini*[16] is an apt example to illustrate this point. Relying on a Supreme Court decision, the Court of Appeal held a "so-called" reversal, which was in effect practically and legally a modification of the judgment, should be treated for purposes of accruing interest as a modification.[17] Finding the original judgment was only modified and not reversed on appeal, the court held the plaintiff was entitled to be paid interest at the legal rate from the date of entry of the original judgment. "While the verdict of the jury and the ensuing judgment entered by the clerk temporarily lost its standing by reason of the erroneous granting by the court below of a new trial and a judgment notwithstanding the verdict, this court thereafter held that such orders of the trial court were void. Thereby, it was held by the court that the original judgment based on the jury's verdict was sound. ■ As a matter of law, the original judgment has existed from the date on which it was entered by the county clerk, even though temporarily beclouded by the errors of the trial judge in granting successively the motions after judgment. There is no reason to deprive the winning party of the interest to which he has been entitled from the date of the original entry of the verdict."[18]

So too in the case at bar, the original order for child support temporarily lost its standing by reason of the trial court's error in suspending William's payment obligations while Ryan participated in the American Field Service program. We found the order suspending child support payments erroneous and void and reinstated William's support obligation for this period.

---

[15] *Beeler v. American Trust Co.* (1946) 28 Cal.2d 435, 437 [170 P.2d 439] ("It is appellant's position that said sums under the original judgment should not bear interest until the date that judgment became final (the date the remittitur issued). Neither the record nor the applicable law supports appellant's position."); *Stockton Theatres, Inc. v. Palermo* (1961) 55 Cal.2d 439, 442 [11 Cal.Rptr. 580, 360 P.2d 76] ("A judgment bears legal interest from the date of its entry in the trial court even though it is still subject to direct attack. . . . When a judgment is modified on appeal, whether upward or downward, the new sum draws interest from the date of entry of the original order, not from the date of the new judgment."); *Snapp v. State Farm Fire & Cas. Co.* (1964) 60 Cal.2d 816, 821–822 [36 Cal.Rptr. 612, 388 P.2d 884] ("The important question as to when interest commences should not depend on mere formalism, but on the substance of the order. The *Stockton Theatres* case holds that a 'reversal' that practically and legally is a 'modification,' should be treated for purposes of the accrual of interest as a modification [bearing interest from the date of the original judgment]."); *Ehret v. Congoleum Corp.* (2001) 87 Cal.App.4th 202, 210 [104 Cal.Rptr.2d 370] (the prevailing parties were entitled to postjudgment interest from the date of the original judgment on the jury's verdict, rather than from the date of the judgment following the remittitur).

[16] *Espinoza v. Rossini* (1967) 257 Cal.App.2d 567 [65 Cal.Rptr. 110].

[17] *Espinoza v. Rossini, supra*, 257 Cal.App.2d 567, 570.

[18] *Espinoza v. Rossini, supra*, 257 Cal.App.2d 567, 573.

Thus, consistent with established law, William's obligation to pay statutory interest on these unpaid amounts necessarily accrued from the date each installment was erroneously suspended and remained unpaid.[19] Under existing law, the trial court lacked discretion or authority to order interest to accrue from any other date. We accordingly find no error.

## II. MONTHLY PROOF RYAN SATISFIED THE CONDITIONS FOR CONTINUED CHILD SUPPORT AFTER AGE 18 IS NOT A PREREQUISITE TO ENFORCEMENT OF AN ORDER FOR CHILD SUPPORT.

Section 3901 provides in pertinent part: "(a) The duty of support imposed by Section 3900 continues as to an unmarried child who has attained the age of 18 years, is a full-time high school student, and who is not self-supporting, until the time the child completes the 12th grade or attains the age of 19 years, whichever occurs first."

Based on this section William contends he owed no duty of support during the relevant period because Ryan was living in Japan and was thus no longer physically living with his custodial parent. Although Ryan lived several months with his Japanese surrogate parents, Ursula nevertheless remained his sole legal and custodial parent. She accordingly remained responsible for Ryan's care, welfare and education during this period while Ryan was a minor and attending high school classes in Japan. Ursula's responsibilities were not eliminated simply because she was required to monitor Ryan's welfare from a distance during this period.

Alternatively, William argues he owed no duty of support after Ryan turned 18 because Ursula provided no proof Ryan satisfied the various

---

[19] Code of Civil Procedure section 685.020, subdivision (b) ("Unless the judgment provides otherwise, if a money judgment is payable in installments, interest commences to accrue as to each installment on the date the installment becomes due.").

William's argument implies he should not be liable for interest from the date of the original order because in 1998 this order was modified and he thus did not know whether he would ultimately be liable for $19,000 or $6,000 a month in child support, or for nothing at all during this period. (Citing *Safeway Stores v. King Lumber Co.* (1941) 45 Cal.App.2d 17, 23 [113 P.2d 483] [the law only awards interest on money from the time it falls due, when the debtor knows the precise amount he has to pay].) It is immaterial whether a judgment is modified upward or downward on appeal. As noted, the original judgment as modified-as in this case-bears interest from the date the original judgment was entered. (*Stockton Theatres, Inc. v. Palermo, supra*, 55 Cal.2d 439, 442.)

statutory conditions noted above for continued support. William cites no authority for the proposition such proof was a prerequisite to his obligation to pay child support. This is because this is not, nor could it be, the law. Monthly proof a child is still unmarried, or is still not self-supporting, or is still unemancipated, or is still attending high school or the like in order to trigger that month's child support obligation is not a prerequisite to entitlement to child support beyond the age of 18, or at any other age. Such a requirement would place a needlessly heavy burden on payee parents and prove impractical and unworkable.

■ We also note the Legislature has enacted no such rule. It has instead provided the payee parent must only notify the payor parent upon the happening of a condition which terminates the duty of support.[20] The Legislature has provided the payor parent adequate protection by specifying any overpayments are subject to refund.[21]

If William had a bona fide question whether any terminating contingency had occurred he could have raised the issue long before the hearing on Ursula's petition to declare the child support arrearages delinquent—or simply inquired of Ursula or her counsel. He did neither.

In short, we find William's argument is not well taken.

### III. THE TRIAL COURT DID NOT ERR IN IMPOSING A STATUTORY PENALTY FOR FAILING TO PAY ACCRUED ARREARAGES AFTER RECEIVING NOTICE OF THE DELINQUENCY.

William claims the trial court abused its discretion in imposing penalty interest on the child support arrearages the court found delinquent. We do not agree.

■ Section 4722 provides any amount of child support specified in a notice of delinquency which remains unpaid for more than 30 days after the notice has been filed and served "*shall* incur a penalty of 6 percent of the delinquent payment for each month that it remains unpaid, up to a maximum of 72 percent of the unpaid balance due."[22]

■ Section 4726 specifies conditions which must be met to avoid this penalty interest. This section provides: "No penalties may be imposed pursuant to this chapter if, in the discretion of the court, all of the following conditions are met:

---

[20] Section 4007, subdivision (a).

[21] Section 4007, subdivision (b).

[22] Section 4722, subdivision (b), italics added.

"(a) Within a timely fashion after service of the notice of delinquency, the support obligor files and serves a motion to determine arrearages and to show cause why the penalties provided in this chapter should not be imposed.

"(b) At the hearing on the motion filed by the support obligor, the court finds that the support obligor has proved any of the following:

"(1) The child support payments were not 30 days in arrears as of the date of service of the notice of delinquency and are not in arrears as of the date of the hearing.

"(2) The support obligor suffered serious illness, disability, or unemployment which substantially impaired the ability of the support obligor to comply fully with the support order and the support obligor has made every possible effort to comply with the support order.

"(3) The support obligor is a public employee and for reasons relating to fiscal difficulties of the employing entity the obligor has not received a paycheck for 30 or more days.

"(4) It would not be in the interests of justice to impose a penalty."

William did file a petition to determine arrearages after receiving notice of the delinquency. However, he failed to prove any of the conditions necessary to grant relief from the penalty provision. As William conceded at the hearing, the child support payments were not only 30 days in arrears as of the date of the notice of delinquency, but were 60 days in arrears—and only then assuming a check tendered in Ryan's name, as opposed to Ursula's as ordered, satisfied his obligation to tender the amount owed.

William provided no evidence of serous illness or disability and in any event it was undisputed William had the financial ability to pay the amount owed regardless of his employment status or personal health.

Finally, William provided no evidence to establish it would not be in the interest of justice to impose the penalty. To the contrary. As the court found at the April 2003 hearing, William had been ordered to pay this amount in September 2002.[23] The trial court found his failure to pay after being ordered to do so seven months earlier sufficiently egregious to warrant requiring penalty interest. The trial court was also displeased William had waited until

---

[23] Moreover, like the trial court, we note several of these arguments had been expressly or implicitly rejected either by this court's or the trial court's earlier rulings.

service of Ursula's notice of delinquency to assert his various arguments which he now claimed permitted him to avoid his child support obligation.

These circumstances in combination support the trial court's exercise of discretion to find William had not satisfied the statutory conditions necessary to avoid imposition of penalty interest in this case.[24]

## DISPOSITION

The order of the trial court is affirmed. Costs on appeal are awarded to respondent.

Perluss, P. J., and Zelon, J., concurred.

---

[24] *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598 [153 Cal.Rptr. 423, 591 P.2d 911] ("it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.").