**[Cite as *A.B. v. R.B.*, 2022-Ohio-1105.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

A.B.                                                   Court of Appeals No.  L-21-1041

       Appellee                                   Trial Court No.  JC 06162437

v.

R.B.                                                   **DECISION AND JUDGMENT**

       Appellant                                  Decided:  March 31, 2022

* * * * *

Mr. Jeremy W. Levy, for appellee.

Mr. Theodore B. Tucker, III, for appellant

* * * * *

**MAYLE, J.**

**Introduction**

{¶ 1} The parties to this action, A.B. and R.B., divorced in 1995 in California and have three children, all of whom are now emancipated.   After their divorce, R.B., the father and appellant herein, moved to Ohio.  In 2006, A.B., the mother and appellee,

sought to enforce a California child support order by registering it in the Lucas County Court of Common Pleas, Juvenile Division under Ohio's "Uniform Interstate Family Support Act."

{¶ 2} In this appeal, father challenges a February 1, 2021 judgment by the juvenile court that ordered him to pay mother $21,054.38 "plus interest" for child support arrearages, and $6,175.00 for attorney fees. Father does not challenge the trial court's determination that he owes $21,054.38 in child-support arrearages and $6,175.00 in attorney fees. Rather, this appeal is limited to a single issue: interest on child-support arrearages.

{¶ 3} The trial court determined that father is required to pay interest as provided in the California order—presumably as determined by California law, where the child support order was issued. Father argues that interest should be determined under Ohio law instead.

{¶ 4} As set forth herein, we affirm the lower court's judgment, finding that mother is entitled to interest as to the arrearages, consistent with California law.

## Background

{¶ 5} This case is complicated by the fact that the record, as received from the Lucas County Clerk of Courts, begins with an entry from 2012. Yet, the parties agree that this case was filed in 2006 when mother sought to enforce a child support order, issued in California, by registering it in the juvenile court, under Chapter 3115 of the

2.

Ohio Revised Code, entitled "The Uniform Interstate Family Support Act" (hereinafter "UIFSA").

{¶ 6} Between 2012 and 2015, the Lucas County Child Support Enforcement Agency ("LCCSEA") filed three separate motions to show cause against father for his failure to pay child support under the California order. Each motion was dismissed on the eve of hearing when father became compliant, only to subsequently become non-compliant again. At issue in this case is a fourth motion to show cause, filed directly by mother, on May 31, 2019.

{¶ 7} In her motion, mother alleged that father's "continuous failure to pay his support obligations by this and other courts * * * resulted in the accumulation of arrears in the amount of $82,458.96 as of January 31, 2019." Mother also asserted that the initial California order —which required father to pay $500 per month—was modified by the Superior Court of Orange County, California on August 22, 2000, "such that Defendant [is] obligated to pay $1,000 per month for the support and maintenance of the then minor children and $50.00 per month for child support arrears. (case No. 99FL07206)." A certified copy of the California order, dated August 22, 2000, was admitted into evidence at the hearing on mother's motion. Father does not dispute that he is subject to that order.[1] The California order sets a $1,000 monthly child support obligation and includes

---

[1] Notably, mother asserts that the August 22, 2000 California order "was registered in this Court" on April 8, 2003. (*See* Mother's "Objections to Magistrate's Decision Dated November 10, 2020 and Request for Transcript" at 2). The record, however contains no filings before June of 2012. Thus, we cannot verify that the August 22, 2000 California

3.

the following provision: "NOTICE: Any party required to pay child support must pay interest on overdue amounts at the 'legal' rate, which is currently 10%."

{¶ 8} On September 22, 2020, a hearing was held before a magistrate on mother's motion. The parties and the LCCSEA, which was represented by counsel at the hearing, stipulated that father owes a total of $21,054.38 in child support arrearages. Most of the testimony at the hearing focused on the value of father's assets and on his ability to pay.

{¶ 9} On November 10, 2020, the magistrate found that father's "total unpaid arrearage balance [is $21,054.38]" and that father "has the ability to pay." The magistrate ordered father to pay mother according to the schedule set forth in the decision and to pay her $6,175 in attorney fees. Both parties filed objections.

{¶ 10} Father's objections mostly focused on his ability to pay, whereas mother argued that the magistrate erred by not ordering father to pay interest on the arrearage amount. Specifically, mother claimed that she was entitled to interest under California law—as stated in the California order dated August 22, 2000—and the magistrate improperly modified the California order by failing to award interest on the arrearages.

{¶ 11} On February 1, 2021, the trial court adopted the magistrate's findings regarding father's ability to pay. But, the trial court also found that the magistrate erred

___

order was, in fact, registered in Lucas County. But, given that there is no evidence to the contrary, we will assume regularity in the proceedings. *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). Accordingly, we assume that the August 22, 2000 child support order was properly registered in Lucas County in accordance with the UIFSA.

4.

by failing to include interest on the arrearage award. The trial court determined that "[e]liminating the interest provision of the California Order constitutes a modification of that Order, and this Court lacks jurisdiction to make such a modification." It ordered father to pay mother "a lump sum judgment in the amount of $21,054.38 *plus interest* as and for child support and a lump sum judgment in the amount of $6,175.00 in attorney fees." (Emphasis added.)

{¶ 12} Father appealed and raises a single assignment of error for our review:

> The lower court erred in overruling the magistrate's decision on the issue of interest in finding that same constitutes a modification of the foreign order when such decision merely ruled on evidence presented and applied the statutory law.

## Analysis

{¶ 13} When a trial court reviews objections to a magistrate's decision, review is de novo. That is, the court is not bound by the magistrate's decision, but rather has an obligation "to conduct an independent review as to the objected matters to ascertain whether the magistrate has properly determined the facts and appropriately applied the law." *Boersma v. Brancatto*, 6th Dist. Lucas No. L-12-1271, 2013-Ohio-3052, ¶ 8-9, citing Civ.R. 53(D)(4)(d) ("In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law").

5.

{¶ 14} This appeal presents questions involving the interpretation and application of law, which we review de novo. *Accord Patton v. Patton,* 2d Dist. Montgomery No. 25346, 2012-Ohio-5798, ¶ 9; *see also Smoske v. Sicher,* 11th Dist. Geauga Nos. 2006–G–2720, 2006–G–2731, 2007–Ohio–5617, ¶ 21.

{¶ 15} When the juvenile court reviewed the magistrate's decision, it first noted that the magistrate had "found as a matter of law that the interest provision in the California Court Order was not required to be enforced by this Court." The juvenile court then concluded that the magistrate's decision to "eliminat[e] the interest provision of the California Order constitutes a modification of that Order, and this Court lacks jurisdiction to make such a modification." On appeal, father argues that the magistrate actually did not make *any* findings regarding the interest provision of the California order—let alone "eliminate" that interest provision—and, consequently, the magistrate did not "modify" the California order. Rather, according to father, the magistrate simply did not award interest because the magistrate "had no evidence of the claimed interest amount before her and ruled accordingly."

{¶ 16} We agree with father that the magistrate did not make any explicit findings, one way or the other, regarding the interest provision of the California order—and, therefore, the magistrate did not "modify" the order or "eliminate" the interest provision, as the trial court stated. Instead, the magistrate simply failed to award interest on the arrearages. But, while we agree that the trial court may have framed the issue incorrectly, this does not end our analysis. The key issue before the trial court—and now this court

6.

on appeal—is whether proper enforcement of the California order requires the court to award interest on the arrearages, and if so, whether interest should be calculated under Ohio or California law. This requires an analysis of the Full Faith and Credit for Child Support Orders Act of 1994, otherwise known as the uniform-support act.

{¶ 17} The uniform-support act established national standards for states to determine their jurisdiction to issue child-support orders and the effect to be given by each state to child-support orders issued by the courts of other states. *Cruz v. Cumba-Ortiz Cruz*, 116 Ohio St.3d 279, 2007-Ohio-6440, ¶ 19, citing Section 1738B, Title 28, U.S.Code. A few years later, as part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 110 Stat. 2105 (1996), Congress required each state, by January 1, 1998, to adopt the uniform-support act in order to remain eligible for federal funding of child-support enforcement. *Id.,* citing Section 666(f), Title 42, U.S.Code. The uniform-support act sets forth rules for identifying the controlling child-support order and determining which state has "continuing, exclusive jurisdiction" over the order. *Id.* Through these rules, the uniform-support act aims at creating a system in which only one valid support order is in effect at any one time. *Id.* All states have now adopted the uniform-support act. *Id.*

{¶ 18} Ohio's version of the law—entitled The Uniform Interstate Family Support Act ("UIFSA") and codified at R.C. 3115—was originally adopted in 1998. The parties agree that this case is governed by the version of R.C. 3115 that was in effect in 2006, when mother registered the initial California child-support order in the juvenile court.

7.

The 2006 version of the UIFSA was replaced by Am.Sub.H.B. No. 64, which became effective in 2016, but was not made retroactive.

{¶ 19} Although father concedes that he owes interest on the arrearages, he argues that the 2006 version of the UIFSA requires interest to be calculated under Ohio law (specifically R.C. 3123.171) rather than California law. Father claims that the trial court therefore erred by ordering him to pay interest on the arrearages pursuant to "the interest provision of the California order"—i.e., California law.

{¶ 20} The 2006 version of R.C. 3115.41 provided that, "[t]he law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order." As father points out, former R.C. 3115.41 did not include "interest on arrearages" as a matter to be determined according to the law of the issuing state. In addition, father compares former R.C. 3115.41 to the current statute, R.C. 3115.604(A)(2), which specifically provides that the law of the issuing state governs "[t]he computation and payment of arrearages *and accrual of interest on the arrearages under the support order.*" (Emphasis added.) R.C. 3115.604(A)(2). Father concludes that, by its silence, former R.C. 3115.41 provided that interest should *not* be governed by the issuing state's law.

{¶ 21} But, as the comment to the current statute makes clear, R.C. 3115.604 was "intended *to clarify* the wide range of subjects that are governed by the choice-of-law rules established in this section [by identifying] those aspects of the case for which local law is inapplicable. A basic principle of UIFSA is that throughout the process, the

8.

controlling order remains the order of the tribunal of the issuing state * * * until a valid modification. The responding tribunal only assists in the enforcement of that order." (Emphasis added.) Comment to R.C. 3115.604. In that same vein, we note that former R.C. 3115.01(B) defined "child support order" as "an order for the support of a child that provides for monetary support, whether current or in arrears* * * and *may include related costs and fees, interest,* income withholding requirements, attorney fees, and other relief." In other words, interest on arrearages was an express part of a child-support order under former R.C. 3115.01(B).

{¶ 22} So, given that former R.C. 3115.41 expressly provided that "[t]he law of the issuing state" governs the "amount" of "payment of arrearages under *the order*"—and a child-support order was defined by former R.C. 3115.01(B) to include interest on arrearages— the former statute, like the current statute (R.C. 3115.604), expressly requires application of the issuing state's law when determining the amount of interest due on arrearages. (Emphasis added.) *Accord, In re Pease*, 3d Dist. Mercer No. 10-05-21, 2006-Ohio-2785, ¶ 11 (Finding that, under R.C. 3115.41, the non-issuing state's law pertaining to the appellant's child support obligation is "irrelevant.").

{¶ 23} Here, the issuing state is California. Therefore, under the UIFSA, California law governs the calculation of interest that is owed by father to mother under the California order. *Pease* at ¶ 11.

9.

{¶ 24} California Code of Procedure ("CCP") 685.020 provides:

(a)     Except as provided in subdivision (b), interest commences to accrue on a money judgment on the date of entry of the judgment.

(b)     Unless the judgment otherwise provides, if a money judgment is payable in installments, interest commences to accrue as to each installment on the date the installment becomes due.

{¶ 25} CCP § 685.020(b) has been specifically found to apply to delinquent child support payments. Indeed, "[i]t has long been the law [in California] that an enforceable money judgment comes into existence at the time that a child support payment is missed." *In re Marriage of McClellan*, 130 Cal.App.4th 247, 251, 30 Cal.Rptr.3d 5 (2005), citing *In re Marriage of Hubner,* 124 Cal.App.4th 1082, 1089, 22 Cal.Rptr.3d 549 (2004).

{¶ 26} In *McClellan,* the California Fourth District Court of Appeal— which has jurisdiction over the Orange County Superior Court, i.e. the California court that issued the relevant child-support order in this case—provided the following guidance when calculating interest on child support arrearages. It held,

Delinquent child support payments accrue postjudgment interest under the rules applicable to installment judgments. Statutory interest on unpaid child support payments accrues as a matter of law as to each installment when each installment becomes due. * * * Accrued arrearages

10.

are treated like a money judgment for purposes of assessing statutory interest.  Unless otherwise specified in the judgment, interest accrues as to each installment when each installment becomes due and continues to accrue for so long as the arrearage remains unpaid.  (Internal citation and quotation omitted.) *Id.* at 251.

Thus, "[f]or support orders in particular, interest accrues when each installment becomes due and remains unpaid."  33A Cal.Jur.3d Family Law § 1382, citing *McClellan.  See also Thiodeau v. ADT LLC,* S.D.Cal. No. 3:16-cv-02680-GPC-AGS, 2019 WL 5320279, *3 (Oct. 19, 2019).  Moreover, under California law, the accrual of interest is not a discretionary matter but is instead controlled by statute and continues until a judgment is satisfied. *Id.*

**{¶ 27}** Here, the California order is an installment judgment under California law because it provides that father was required to pay child support in the amount of $1000 per month. *McClellan* at 251.  Moreover, that order expressly states "NOTICE: Any party required to pay child support must pay interest on overdue amounts at the 'legal' rate which is currently 10 percent."  *See also* CCP § 685.010(a) ("[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied.")

**{¶ 28}** Father argues that there is no evidence in the record from which an award of interest could be made under California law.  He notes that, while the parties stipulated

11.

to a finding that he owed over $21,054.38 in arrearages, no evidence was offered as to how much interest was owed on that amount

{¶ 29} By contrast, mother claims that "[a]s of 2019, [father] had an outstanding balance of $57,801.40 as in for arrearage interest" [sic]. We find no evidence in the record to support this calculation. Mother tried to rely upon an "an updated accounting" from the California child support agency at the hearing—which may possibly support this calculation of $57,801.40— but the magistrate refused to admit that document into evidence. Mother did not appeal that ruling or proffer the "updated accounting" into the record for our review.

{¶ 30} Based upon our review of the record, there is no information that would allow the court to determine the statutory interest that accrued "as to each installment on the date the installment [became] due" under CCP § 685.020(b). Although a stipulated LCCSEA statement indicates that father had a "Total Unpaid Balance" of "$21,054.38" as of September 22, 2020—which father does not dispute—it is not clear from that document how that figure was calculated. While it is possible that some additional testimony regarding the LCCSEA statement could provide some clarity, none was offered at the hearing. Indeed, mother did not argue in the trial court—or on appeal—that the LCCSEA statement provides enough information for the trial court to calculate the statutory interest "as to each installment" under § 685.020(b). Rather, mother simply repeats her argument that father owes "interest in the amount of $57,801.40"—even though there is no evidence of this figure anywhere in the record.

12.

**{¶ 31}** Accordingly, we agree with father that there is no evidence for the court to determine the interest owed under CCP § 685.020(b). But, that does not foreclose an interest award in this case. CCP § 685.020(a) provides that "[e]xcept as provided in subdivision (b), interest commences to accrue on a money judgment on the date of entry of the judgment." Given that mother has effectively waived her ability to proceed under CCP § 685.020(b), interest should be calculated under CCP § 685.020(a).

**{¶ 32}** The trial court's February 1, 2021 judgment ordered father to pay "$21,054.38 plus interest." Thus, mother is entitled to $21,054.38 plus interest on that lump-sum judgment—which, under the California law, began accruing as of "the date of entry of the judgment" under CCP § 685.020(a), and should be calculated "at the rate of 10 percent per annum on [that] amount" under CCP § 685.010(a).

**{¶ 33}** For the above reasons, we find father's assignment of error not well-taken, and we affirm the trial court judgment that ordered interest on child-support arrearages to be calculated as provided in the California order.

**Conclusion**

**{¶ 34}** The February 1, 2021 judgment of the trial court, ordering father to pay mother a lump sum judgment in the amount of $21,054.38, plus interest—as determined by California law—is affirmed. Father is also ordered to pay court costs pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                 _____
                                                            JUDGE
Christine E. Mayle, J.

                                                    _____
Gene A. Zmuda, J.                    JUDGE
CONCUR.

                                                    _____
                                                            JUDGE


This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.